**UNITED STATES of America,
Appellee,**

v.

**Donald DAVIS, Appellant.**

**No. 72–1819.**

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1973.

Decided June 20, 1973.

Certiorari Denied Oct. 23, 1973.
See 94 S.Ct. 296.

---

J. Hardin Marion, Baltimore, Md. [Court-appointed counsel], (Tydings & Rosenberg, Baltimore, Md., on brief), for appellant.

James E. Anderson, Asst. U. S. Atty. (George Beall, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

Donald Davis was convicted by a jury of bank robbery and aiding and abetting, violations of 18 U.S.C. §§ 2113(a), (b), (d) and (f) and 18 U.S.C. § 2. He was sentenced to imprisonment for 20 years under 18 U.S.C. § 4208(a)(2). In this direct appeal Davis argues that several reversible errors were committed in the prosecution of his case. For the reasons set forth below, we disagree and affirm the conviction.

## FACTS

On August 13, 1971 a lone robber took $2854 from the Provident Savings Bank, 1110 S. Charles Street, Baltimore, Maryland. The robber got in a line, together with other customers at teller Jerrolene Small's window. When he reached the window he asked the teller to exchange his five single dollar bills for a five dollar bill. As she gave him the bill the robber produced a pistol, gave her a bag and demanded it be filled with money. Mrs. Small followed the gunman's instructions and the man escaped. Of all the people in the bank only Mrs. Small and Darlene Cox, the teller at the next window, were aware that a robbery took place.

Immediately afterwards both tellers were shown a spread of photographs by police officers and FBI agents. Both witnesses identified Davis' picture as that of the man who committed the robbery. A magistrate's warrant was issued for Davis' arrest.

On August 18, 1971 Davis was stopped on the street by Baltimore City police officers, who thought he resembled the

photograph of the bank robber reproduced on an FBI circular. When Davis was unable to provide any identification he was frisked and the police found on his person a .32 caliber pistol and 25 bags of heroin. Davis was arrested for possession of those items. Later that day an FBI agent questioned Davis, who made an oral confession that he had committed the bank robbery. The next morning, August 19, Davis was brought to the FBI office where his oral statement of the previous day was transcribed and signed by Davis. Approximately one hour later Davis was brought before the magistrate.

The trial began on March 6, 1972, continued on March 7, 8, 13, and was concluded with the jury's verdict on March 14.

Davis raises a plethora of issues in this appeal, most of which we regard as frivolous. Several of his points, however, do merit discussion.

## PHOTOGRAPHIC IDENTIFICATION

■ Teller Jerrolene Small made an in-court identification of Davis. Davis argues that admission of this identification was reversible error because of the taint of an improper prior photographic identification. We disagree.

Of the several photographs shown Mrs. Small on the day of the robbery, only Davis' picture presented a Negro man with a moderate Afro hair style and a short beard. All the other photos were of Negro men with short hair who were clean shaven with the exception of several with moustaches. Davis argues that these factors render the photographic identification " * * * impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). This identification, according to Davis, inevitably tainted the subsequent in-court identification.

A claim that an in-court identification was tainted by a previous photographic

identification " * * * must be evaluated in light of the totality of surrounding circumstances." United States v. Marson, 408 F.2d 644, 650 (4th Cir. 1968), and cases cited therein. According to that standard we find the in-court identification made by Mrs. Small free from any possible suggestive taint. Davis' photograph showed him as he appeared at the time of his arrest, with a beard and his Afro hair style. The day Mrs. Small testified, Davis did not have his beard. Before Mrs. Small testified Davis was seated among the spectators near four other Negroes. Two of the men were selected by Davis for this purpose. Mrs. Small nevertheless identified Davis from all those present in the court room. This convinces us that her in-court identification was independent of the photographic identification made seven months earlier. Therefore we need not decide whether the photographic lineup, in which Davis' picture was the only one portraying a bearded subject with an Afro styled hairdo, was impermissibly suggestive. *Cf.* United States v. Fernandez, 456 F.2d 638, 641 (2d Cir. 1972).

## PSYCHIATRIC EXAMINATION

■ On December 29, 1971, several months prior to the trial, Davis' counsel made a motion under 18 U.S.C. § 4244 for an examination of Davis to determine his mental competency to stand trial. The petition requested that the court appoint Dr. Leonard J. Gallant or any other competent psychiatrist to examine Davis. The court, after conferring with counsel, appointed Dr. William W. Fitzpatrick, the psychiatrist usually employed by the court for such examinations.

Davis now argues that failure to appoint Dr. Gallant constitutes reversible error under the dictum of United States v. Matthews, 472 F.2d 1173 (4th Cir. 1973). It is our view that Matthews does not control here. The defendant in *Matthews* moved for a psychiatric examination under 18 U.S.C. § 3006A(e), which section governs situations in

which the court authorizes "[c]ounsel for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense * * *" to secure them for his client at Government expense. When a doctor is selected to examine a defendant under this statute it is envisioned that the doctor will be part of the accused's insanity defense. Section 4244, on the other hand, controls examinations to determine competency to stand trial and expressly states that the examining doctor will not be permited to testify against the accused on the issue of guilt in any criminal proceeding. *See* United States v. Theriault, 440 F.2d 713, 715 (4th Cir. 1971).

■■ In *Matthews* we indicated that the doctor preferred by the defendant should be allowed to examine him under a section 3006A(e) motion unless the court sees compelling reasons why this should not be permitted. We sought to provide the indigent defendant with a range of choice in selecting a physician similar to the one employed by the affluent defendant and to prevent situations such as the one that occurred in *Matthews* where the United States Attorney's office chose the defendant's doctor. Such considerations do not arise under a section 4244 motion where the only purpose is to provide the court with sufficient information to decide whether the defendant is competent to stand trial.[1] Additionally, we note that the *Matthews* dictum was promulgated under the general supervisory purview of this court and is not to be applied retroactively.

## ALLEN CHARGE

■ A final issue which merits discussion is the trial judge's use of the controversial Allen Charge. Four hours after the jury began its deliberations a note was sent to the judge stating that an impasse had been reached. The court then delivered to the jury a mild form of the Allen Charge.[2]

---

1. Nor can it be said that Davis' situation is governed by our holding in United States v. Taylor, 437 F.2d 371, 377 n. 8 (4th Cir. 1971), where we stated that a motion made under § 4244 that properly should have been made pursuant to § 3006A(e) will be treated as having been so made. For in *Taylor* the background of the defendant, his mental history and behavior patterns all indicated that insanity was to be a major part of his defense. Taylor had previously been committed to a mental hospital, and during his examination at a subsequent date had refused to cooperate with the doctor and even threatened to kill him. Quite clearly a § 3006A(e) examination was called for. In Davis' case such factors are absent and we believe that the motion under § 4244 for an examination to determine competency to stand trial was the correct motion under the circumstances. We therefore need not treat the motion as one made under § 3006A (e).

2. The court's language was:
"Members of the jury, I understand from your most recent note that you have some serious doubts as to whether further deliberations will enable you to return a verdict in this case. In that connection, I want to tell you that it is eminently desirable that if you reasonably can, that you agree upon a verdict in this case.

For the parties that are involved, the Government and the Defendant, this case is an important one, and its presentation to you has involved expense and expenditure of time by both sides of the case. If you, members of the jury, fail to agree upon a verdict, the case will have to be tried before another jury, selected in the same manner and from the same source as you were chosen. There is no reason to believe that the case will ever be submitted to another jury more competent to decide it than this jury is.

Of course, by pointing out to you the desirability of your reaching a verdict, the Court is not suggesting to you that you surrender conscientious convictions of what the truth is and of the weight and effect of all the evidence. It does, however, wish to call to your attention that in most cases absolute certainty cannot be expected, although the Government is, of course, required to convince you, by evidence beyond a reasonable doubt, of the guilt of the Defendant of every essential element of the crime charged.

The propriety of this type charge has been the subject of strong disagreement among the circuits. It has been held reversible error by some, *see* United States v. Fiorvanti, 412 F.2d 407 (3d Cir. 1969); United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177 (D.C. Cir. 1971); and criticized as coercive, *see* Green v. United States, 309 F.2d 852 (5th Cir. 1962). *See also* Sullivan v. United States, 414 F.2d 714 (9th Cir. 1969), and United States v. Wynn, 415 F.2d 135 (10th Cir. 1969).

Nevertheless, our circuit has repeatedly stated its approval of the Allen Charge and we do not retreat from that position.[3] *See* United States v. Sawyers, 423 F.2d 1335 (4th Cir. 1970). We do reiterate our recommendation made in *Sawyers*, that trial judges in this circuit consider use of the American Bar Association version of the Allen Charge. But the charge given in this case, under the circumstances described, was in conformity with the accepted standards of our circuit.

Finding no error in the trial court proceedings, we accordingly decide that the conviction be

Affirmed.

---

While each one of you must decide this case for yourself and not merely acquiesce in the conclusions of your fellow jurors, you should examine the questions submitted to you with candor and frankness and with proper deference to, and regard for, the opinions of each other.

It is your duty, after full deliberation and consideration of all the evidence, to agree upon a verdict, if you can do so without violating your individual judgment and conscience.

Under the circumstances, the Court feels that it would be desirable for you to retire again and continue your deliberations in the light of what I have just told you.

3. Although the author of this opinion dissented in the *Sawyers* case, disapproving the Allen Charge given by the trial court, his vote to affirm Davis' conviction is not inconsistent with his previously stated position.

The circumstances under which the charge was given in *Sawyers* were far different than in Davis' case and were, as stated in the *Sawyers* dissent, inherently unfair and prejudicial to the defendant. The judge had been informed of how the vote in the jury room stood and of details of the individual jurors' attitudes and behavior during the deliberations. Davis' case contains none of these elements. So, even though this writer regarded use of the Allen Charge as being unfair under the circumstances of *Sawyers*, he does not perceive the same inherent unfairness to Davis.

Speaking for myself, I would nevertheless do away with the Allen Charge and, utilizing the supervisory powers of the court, adopt prospectively the American Bar Association recommended standard. *See Sawyers*, 423 F.2d at 1342 n. 7. The questionable benefits of the charge do not, in my judgment, justify the unending litigation and confusion it breeds. But since my brethren disagree, the standard of our circuit remains unchanged.