Frank C. WINTERS, Appellant,

v.

UNITED STATES, Appellee.

No. 6658.

District of Columbia Court of Appeals.

Reargued en banc July 2, 1973.

Decided March 20, 1974.

James F. Bromley, Washington, D. C., appointed by this court, for appellant.

David G. Larimer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Richard L. Cys, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, PAIR, YEAGLEY and HARRIS, Associate Judges, sitting en banc.

NEBEKER, Associate Judge:

The court, sua sponte, reheard this case en banc to consider a renewed attack on the traditional and so-called *Allen* charge.[1]

---

I. The term "*Allen* charge" is derived from Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The charge itself was taken from Commonwealth v. Tuey, 8 Cush. 1 (Mass.1851), and approved by the Supreme Court in *Allen.*

The standard *Allen* charge now given (Instruction 2.91, Alternative B, Criminal Jury Instructions for the District of Columbia (1972 ed.)) states:

In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of your fellows, yet you should examine the questions submitted with candor and with proper regard and deference to the opinions of each other. It is your duty to decide the case if you can conscientiously do so. You should listen to each other's arguments with a disposition to be convinced. If much the larger number of jurors are for conviction, a dissenting juror should consider whether his doubt is a reasonable one which makes no impression upon the minds of so many jurors, equally honest, equally intelligent with himself. If, upon the other hand, the majority are for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which is not concurred in by the majority.

Appellant's point, as he views that instruction, is that it unconstitutionally invades the province of the jury and thus denies a trial by jury. In a word, appellant says that the instruction is coercive. He urges that we follow other courts, particularly the United States Court of Appeals for the District of Columbia Circuit, and command use of the anti-deadlock variation of the *Allen* charge as approved by the American Bar Association.[2]

Of course, at the time the instruction was given in this case, it was in conformity with Simms v. United States, D.C.App., 276 A.2d 434 (1971), and not erroneous per se. In the context of this case we are not persuaded to hold the instruction to be error. Moreover, in the circumstances of its use in this case we do not find it coercive to the point of requiring reversal of the conviction.

As a result of a cutting incident outside a neighborhood bar, appellant was charged with assault with a dangerous weapon,[3] and with carrying a dangerous weapon.[4] The actual trial lasted about 5 hours. The victim testified that although there had been some past differences between them, appellant, without provocation, cut him on the side of the face as they left the bar. The victim saw no knife but the cut was extensive. The defense was alibi; it was presented through only a single witness, a friend of the accused.

After about 20 minutes of deliberation on the afternoon of the trial, the jury sent a note asking questions as to which hospital the victim had been taken for treatment, whether they could view the victim's scars at close range, and whether they could see the lineup photograph exhibit. Only the latter request was honored. The jury was excused for the night after only about 20 or 25 minutes of further deliberation. The following morning, after about 45 minutes of additional deliberation, the jury, by note asked for further instructions, which were given without objection. The jury renewed deliberations at 11:20 a. m. After one hour devoted to lunch, deliberations were again undertaken. At 1:50 p. m. another note arrived stating that the jury had reached a verdict on count 2 (carrying a dangerous weapon), but "Can't reach decision on charge # 1 (ADW) . . . Shall we continue or adjourn?" The court took the verdict, an acquittal on count 2, and then gave the standard *Allen* charge over appellant's objection. The jury resumed its deliberations and, within 25 minutes, returned a verdict of guilty on the remaining count.

In Simms v. United States, *supra*, this court specifically approved the traditional *Allen* charge. We also quoted with approval the admonitions of Chief Justice Burger when, as a member of the United States Court of Appeals for the District of

---

2. ABA Project on Minimum Standards for Criminal Justice, Trial by Jury, Commentary, § 5.4(a) (Approved Draft, 1968) approving, as consistent with the standards, Instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 97–98 (1961), which reads:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> You are not partisans. You are judges— judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

This proposed instruction appears as Instruction 2.91, Alternative A, in the Criminal Jury Instructions, *supra* note 1.

3. D.C.Code 1973, § 22–502.

4. D.C.Code 1973, § 22–3204.

Columbia Circuit, he observed that to avoid a possible charge of coercion, the trial judge should give the traditional *Allen* charge without variation. Fulwood v. United States, 125 U.S.App.D.C. 183, 186, 369 F.2d 960, 963 (1966). In the instant case the trial court judge gave the *Allen* charge without variation as we advised in *Simms.* While the inconsistency of the verdicts in this case does reveal a curious course of reasoning, we cannot hold that the wide power of the jury, in deliberation, is so severely restricted by its decision to acquit on the weapon count that a verdict on the assault count had to be one of acquittal also. *See* Branch v. United States, D.C.App., 263 A.2d 258 (1970).

■ In this case, some of the factors which produce our conclusion that the verdict is not infested with error by the anti-deadlock instruction or its timing are worth listing. The trial was relatively short and the factual dispute narrowly defined. The jury spent about 2 hours and 20 minutes deliberating before announcing deadlock, and another 25 minutes thereafter—about half as long as the trial itself. The jury had not been sequestered. Moreover, a verdict favoring appellant was taken just before the jury received the challenged instruction. *See* United States v. Birrell, 447 F.2d 1168, 1173 (2d Cir. 1971). Under these circumstances we cannot agree with appellant that the jury verdict was the product of a coercively applied anti-deadlock charge.

Indeed, at oral argument counsel for appellant agreed that the major coercive force in a seemingly deadlocked jury is the obvious existence of a disagreement among the jurors. It is not hard for anyone to understand that in cases of deliberative group decisions a coercive force naturally exists when those in disagreement must deal face-to-face with those of opposite per-

suasion. It is not whether the charge supplies coercion, for that element is already present from a desire for a decision and disagreement as to it. The issue in all these cases is whether the instruction would objectively appear to force a juror to abandon his honest conviction as a pure accommodation to the majority of jurors or the court. We see nothing of constitutional magnitude in the reference in the *Allen* charge to the existence and juxtaposition of a majority and minority.

■ Because of the recurring nature of this question and its recognized drain on judicial resources,[5] we think it now serves the administration of justice to adopt a rule for future cases. Because such a rule will not be a holding in this case, due to our affirmance of the conviction, we propound it in the exercise of our superintendent responsibility.[6] We have examined the very contemplative opinions of the courts which have wrestled with this problem. Until recently the major emphasis has been on deciding between the *Allen* charge and the variation approved by the American Bar Association. Indeed, that is the choice offered by the parties. The option has been between a charge which specifically refers to a majority-minority polarization and a charge in which that probability is totally deemphasized in preference to highlighting the duty of the individual juror to listen but make independent judgment. But of late the court which gave birth to the *Allen* charge, or the *Tuey* charge as it is known in Massachusetts,[7] has taken an imaginative step to gently discipline its potentially errant offspring. *See* Commonwealth v. Rodriquez, 300 N. E.2d 192 (Mass.1973). There, as here, the court affirmed a conviction in which the *Tuey charge* was given to the deadlocked jury. That court went on, in the exercise of its superintendent power, to adopt for the future a variation of the *Tuey* charge in

5. United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971).

6. United States v. Yates, D.C.App., 279 A.2d 516 (1971) ; Tate v. United States, 123 U.S.

App.D.C. 261, 359 F.2d 245 (1966). *See also* United States v. Bailey, 480 F.2d 518, 520–521 (5th Cir. 1973).

7. *See* note 1, *supra.*

which the majority-minority phrasing was eliminated. In so doing, the Massachusetts court took note of the criticism leveled at the *Tuey* charge:

. . . [T]he *Tuey* charge invites the members of the tentative minority to reconsider their position in the light of the views of the tentative majority, but does not invite the majority members to reciprocate toward the minority (except as it asks each juror to listen to the others). The imbalance and weakness of this part of the *Tuey* charge have now been widely recognized. Judge McGowan has remarked that it "has widely been thought to contain the true dangers to free and unfettered exercise of individual judgment and expression of conscience which is at the very core of the jury system. Many trial judges, although still using the *Allen* charge, have abandoned this element of it long ago." United States v. Johnson, 139 U.S.App. D.C. 193, 432 F.2d 626, 633. It has been said to "assume an inherently faulty major premise," namely, "the majority is right and has reached its preliminary inclination by appropriately inspired processes, and that the minority in a given group possesses attributes of spurious rationality"; it is "a direction that . . . [jurors] be influenced by some sort of Gallup Poll conducted in the deliberation room"; it "serves to substitute the coercive influence of any early polling of the jury for the give and take of group deliberation,[14] a basic attribute of

14. The possible effect of the majority-minority phase of the charge on the individual juror has been thus depicted: "The majority think he is guilty; the Court thinks I ought to agree with the majority so the Court must think he is guilty. While the Court did tell me not to surrender my conscientious convictions, he told me to doubt *seriously* the correctness of my own judgment. The Court was talking directly to me, since I am the one who is keeping everyone from going home. So I will just have to change my vote." State v. Voeckell, 69 Ariz. 145, 157, 210 P.2d 972, 980 (dissenting opinion). Arizona later abandoned

the *Tuey* charge in its conventional form. State v. Thomas, 86 Ariz. 161, 342 P.2d 197.

the jury system often expressed as a major characteristic justifying its continuance in our judicial system." Aldisert, J., in United States v. Fioravanti [412 F.2d 407, 416, 417 (3d Cir. 1969)].
. . .

Commonwealth v. Rodriquez, *supra,* 300 N.E.2d at 201 (emphasis and footnote as in original). Moreover, an inaccurate but fundamental assumption in any charge phrased exclusively in terms of majority-minority views ignores the possibility that a jury of even number membership may be equally divided. In that event, such an instruction logically falls on deaf ears and may tend to confuse the jury.

We are persuaded that the Massachusetts court has reached the best accommodation for preserving juror independence and yet stimulating a decision in the face of deadlock. Set forth in the Appendix hereto is the instruction, reflecting changes from the previous *Allen* charge (*see* footnote 1, *supra*), which we now adopt for future use in the Superior Court of the District of Columbia in lieu of the *Allen* charge. In our view, the new instruction has the needed attribute of sufficient suasion for decision while preserving juror independence. Thus, frequency of attacks questioning the presence of undue coercion for jury decision will hopefully be reduced. However, it must be remembered that the new instruction also has a "sting", as the *Rodriquez* opinion calls it, "and our approval of it is not to be taken as an indication that it may be used prematurely or without evident cause." *Id.* 300 N.E.2d at 202. Thus, its use should be confined to instances where deadlock is apparent. Premature use, during the general charge, may lead to confusion and create disagreement among the jurors simply because the judge indicated he expected disagreement.

Our decision herein should not be understood to limit the instructional discretion

of the trial judges. We are only setting the highwater mark for an anti-deadlock charge. Use of a less emphatic charge such as the one contained in the ABA standards [8] may be deemed appropriate, either in the original charge or after deadlock becomes apparent.

Affirmed.

## APPENDIX

### The Allen Charge, with Changes

(Deletions are shown by brackets; additions by italicizing.)

In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of your fellows, yet you should examine the questions submitted *to you* with candor and with proper regard and deference to the opinions of each other. [It is your duty to decide the case if you can conscientiously do so.] *You should consider that it is desirable that the case be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve persons more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so.* You should listen to each other's arguments with a disposition to be convinced. [If much the larger number of jurors are for conviction, a dissenting juror] *Thus, where there is disagreement, jurors for acquittal* should consider whether [his] *their* doubt is a reasonable one which makes no impression upon the minds of [so many jurors,] *others,* equally honest, equally intelligent with [himself] *themselves, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath.* [If, upon] *And on* the other hand, [the majority are for acquittal, the minority] *jurors for conviction* ought *seriously* to ask themselves whether they might not reasonably doubt the correctness of a judgment which is not concurred in by [the majority] *others with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction in the minds of their fellows.*

GALLAGHER, Associate Judge (concurring):

While I agree with the court that the "recurring nature of this question and its recognized drain on judicial resources" does not serve the administration of justice, the growing national trend to discard the *Allen* charge stems from problems which go deeper than that. This concurrence is to point out considerations additional to those related in the court's opinion.

Over ten years ago Mr. Justice Clark reported to the 50th annual meeting of the American Judicature Society that in conducting seminars for trial judges, the Joint Committee for Effective Administration of Justice did not "circulate the 'Allen charge' to the new judges as I used to do when heading up the criminal division in the Department of Justice. *Allen* is dead and we do not believe in dead law."[1] In laying the *Allen* charge to rest this court joins an emerging majority of jurisdictions which have come to conclude the "dynamite charge"[2] (*Allen* charge) has no proper role to play in the courtroom.

---

8. *See* note 2, *supra.*

1. Progress of Project Effective Justice—A Report on the Joint Committee, 47 J.Am.Jud. Soc'y 88, 90 (1963).

2. Green v. United States, 309 F.2d 852, 853 (5th Cir. 1962). In Colorado, the charge was called the "third degree instruction." Leech v. People, 112 Colo. 120, 146 P.2d 346, 347 (1947). The New Mexico term for it is the

More important than the difficulties of appellate review that *Allen* has caused is the inevitability that the charge, insofar as it asks only the minority to reexamine its position, unjustifiably intrudes the trial court into the jury's province of factfinding. This is because the charge pressures the minority and only the minority. "[B]ut there is no legal rule that the majority of jurors have better judgment than the minority. There is no legal rule that the minority, merely because they are in the minority, should distrust their own judgment." Green v. United States, 309 F.2d 852, 855 (5th Cir. 1962). It is contrary to the concept of a free society that one who is outnumbered is wrong for that reason alone. No judge should instill that notion in a juror's mind.

Our jury system is based upon the assumption that litigants will have their rights or liberties determined by a panel which is free to deliberate, reason and decide according to the court's instructions on the law and their own view of the facts. Each individual juror must reach a decision in accordance with conscience. "A conscientious citizen serving as a juror wants earnestly to do his duty. . . . In performing his role in the pursuit of justice, the juror wants to feel that he is as loyal, as conscientious, as fearless, as courageous and as objective as the Judge. He wants to be a good citizen. He desires for at least this one time in his life to measure up to what he senses and feels in the atmosphere of the courtroom." Huff-

man v. United States, 297 F.2d 754, 758 (5th Cir. 1962) (Brown, J., dissenting). When the trial court instructs the jury that the minority, and only the minority, should examine its position, an extraneous element is injected into the deliberative process. Consensus is preferred over judgment and a preoccupation with numbers is encouraged. For these reasons *Allen*, a relic of the past, should be laid to rest. The truth of the matter is that the *Allen* charge has been under continual siege over the decades[3] and all the while it has been more tolerated than embraced. The "minority" aspect of the charge has rarely been defended on the merits. It is this part of the charge which has caused the most concern.[4]

In fairly close succession, New Hampshire's Supreme Court has suggested "that in the future trial judges should consider the more circumscribed instructions recommended in the *ABA Standards*," State v. Blake, 305 A.2d 300, 306 (N.H.1973), while the Vermont Supreme Court specifically disapproved of the use of any "charge that departs from the substance of" those standards. State v. Perry, 306 A.2d 110, 112 (Vt.1973). Likewise the Supreme Court of Rhode Island asked trial justices to consider complying with the ABA standards. State v. Patriarca, 308 A.2d 300, 323 (R.I.1973).

Perhaps the earliest jurisdiction to bury *Allen* was Arizona in State v. Thomas, 86 Ariz. 161, 342 P.2d 197 (1959). The Supreme Court of that state found no mis-

---

"shotgun instruction." State v. Nelson, 63 N.M. 428, 321 P.2d 202, 204 (1958). I must say the popular names for the charge do nothing to recommend it.

3. Maybe this is due somewhat to the strange birth of the *Allen* charge. The Supreme Court had twice reversed Allen's conviction *because of faulty jury instructions*. 150 U.S. 551, 14 S.Ct. 196, 37 L.Ed. 1179 (1893) and 157 U.S. 675, 15 S.Ct. 720, 39 L.Ed. 854 (1894). In Allen III, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the case was before the Supreme Court for the third time, with no counsel representing Allen. The Court began its opinion:

We are somewhat embarrassed in the consideration of this case by the voluminousness of the charge, and the exceptions taken thereto, as well as by the absence of a brief on the part of the plaintiff in error. . . . [164 U.S. at 494, 17 S.Ct. at 154.]

4. The *Allen* charge was sired by Commonwealth v. Tuey, 62 Mass. (8 Cush.) 1 (1851). As stated by this court's opinion in this case, the Massachusetts Supreme Court recently largely disowned its own offspring in Commonwealth v. Rodriquez, 300 N.E.2d 192 (Mass. 1973), by making certain "emendations." I note, also, that the court in *Rodriquez* concurrently approved the ABA charge.

statement of the law in *Allen* but found that considering each case upon its particular facts and circumstances would cause "harassment and distress in the administration of justice" and was thus "convinced that the evils [of the *Allen* charge] far outweigh the benefits." The court decreed that its use would "no longer be tolerated." *Id.*, 342 P.2d at 200. Closely following upon the heels of *Thomas*, the Montana Supreme Court condemned the charge. State v. Randall, 137 Mont. 534, 353 P.2d 1054 (1960). In so doing, that court pointed out why such a charge is error:

> The inevitable effect of the instruction would be to suggest to the minority members of the jury that they ought to surrender their own convictions and follow the majority. A vibrant, pulsating, intelligent minority is a part of our American way of life. The views of the minority often, with the passing of time, become the majority view. . . . The majority view on any given subject is not always the correct view. [*Id.*, 353 P.2d at 1058.]

The Appellate Court of Illinois criticized the *Allen* charge in People v. Richards, 95 Ill.App.2d 430, 237 N.E.2d 848 (1968), and disposed of it and all other deadlock instructions in People v. Mills, 131 Ill.App.2d 693, 268 N.E.2d 571 (1971), saying:

> . . . A deadlock instruction is effective only if and to the extent that it interferes with or limits the free and independent deliberation of a juror. Its message is by necessary implication directed primarily to the minority juror or jurors or to that group less adamant in its convictions. The mischief of the instruction is in large measure related to the practical impossibility of determining the effect upon members of the jury or any resulting prejudice. Correspondingly the benefits to be gained from the giving of such an instruction are not apparent unless it has some coercive effect. This is particularly true in a criminal case where the requirement of proof be-

yond a reasonable doubt imposes a considerably heavier burden on the conscience of each juror . . . . [*Id.*, 268 N.E.2d at 572.]

In 1968, the American Bar Association Advisory Committee on Minimum Standards Relating to Trial by Jury condemned the *Allen* charge and recommended in its stead the charge appearing in the majority opinion in this case (note 2). This set off a chain reaction of appellate decisions.

The South Dakota Supreme Court recommended against future use of the *Allen* charge "to assure the integrity and independence of criminal jury verdicts", State v. Ferguson, 84 S.D. 605, 175 N.W.2d 57, 61 (1970), and considered the American Bar Association (ABA) recommended instruction appropriate for an initial instruction to the jury "as to the nature of its duties in the course of deliberations." *Id.* The Nevada Supreme Court likewise expressed its opinion that "[t]he 'dynamite' charge should be avoided" in Basurto v. State, 86 Nev. 567, 472 P.2d 339, 341 (1970), and in Azbill v. State, 495 P.2d 1064, 1069 (Nev.1972), reiterated the admonition with the further recommendation that "there should be an abandonment of all judicial interference in jury deliberations."

Stressing their concern with the *Allen* charge's implication that the minority jury members should yield to the majority and that the majority of the jury need not reexamine their position in light of the reasonable doubt remaining in the mind[s] of the minority, the Supreme Court of Pennsylvania barred the future use of the instruction in Commonwealth v. Spencer, 442 Pa. 328, 275 A.2d 299, 304 (1971). A similar concern led to a prohibition on the use of the charge in Alaska, Fields v. State, 487 P.2d 831 (Alaska 1971), where the court reasoned that:

> At the very least, the Allen charge encourages majority inaction by failing to emphasize any need for reevaluation of the majority's viewpoint. As a result,

there is a possibility of substituting a numerical preponderance for the requirement that a verdict not only be unanimous but representative of the honest convictions of each individual juror. [*Id.* at 841.]

The Supreme Court of Colorado has directed trial courts not to use the *Allen* charge. *See* Taylor v. People, 176 Colo. 316, 490 P.2d 292, 295 (1971), and the Supreme Court of Oregon disapproved the charge in State v. Marsh, 260 Or. 416, 490 P.2d 491, 503 (1971), cert. denied sub nom. O'Dell v. Oregon, 406 U.S. 974, 92 S.Ct. 2420, 32 L.Ed.2d 674 (1972). The Supreme Court of Maine followed shortly thereafter in State v. White, 285 A.2d 832, 838 (Me.1972). Florida also has frowned on the *Allen* charge. Bryan v. State, 280 So.2d 25 (Fla.App.1973).

In addition, the Supreme Court of North Dakota has recommended the ABA standards for future use, State v. Champagne, 198 N.W.2d 218, 238–240 (N.D.1972), and the Supreme Court of Wyoming has said of *Allen* "that what little benefit to the proper administration of justice might result . . . is far outweighed by the disadvantages." Elmer v. State, 463 P.2d 14, 22 (Wyo.1969), cert. denied, 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82 (1970). Wisconsin abandoned *Allen's* most pervasive vice, the singling out of the minority, more than thirty years ago, *see* Kelley v. State, 51 Wis.2d 641, 187 N.W.2d 810 (1971), as did Nebraska whose Supreme Court now requires compliance with the ABA standards. State v. Garza, 185 Neb. 445, 176 N.W.2d 664 (1970).

The Court of Appeals of Maryland has approved the ABA instruction for use prior to the beginning of deliberations and will allow variations consistent with its prior opinion in Leupen v. Lackey, 248 Md. 19, 234 A.2d 573 (1967), to be used at that time. Once sequestered to deliberate, however, the court thinks "it advisable that a trial judge, who decides to give an *Allen*-type charge because of an apparent deadlock, should closely adhere to the wording of the ABA recommended instruction." Kelly v. State, 270 Md. 139, 310 A.2d 538, 542 (1973). The Supreme Court of Minnesota has held that "use of the Allen charge shall be discontinued in Minnesota and the procedures set forth in [the ABA standards] are adopted for the trial courts in this state." State v. Martin, 211 N.W. 2d 765, 772 (Minn.1973). The court reasoned in part that the ABA charge "avoids the undesirable effect on the minority of having the prestige of the court brought to bear on it by the court's focusing only on the minority to achieve unanimity." *Id.*[5]

While most federal circuit courts have not as yet grasped the nettle, some have favored the ABA Standard as a means to abandon the *Allen* charge. The first to do so was the Seventh Circuit in United States v. Brown, 411 F.2d 930 (7th Cir. 1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970),[6] on the basis that it would serve the interests of justice to have district courts within the circuit follow the ABA model. The Third Cir-

---

5. Decisions which retain the *Allen* charge include: People v. Ozene, 27 Cal.App.3d 905, 104 Cal.Rptr. 170 (1972); Tough v. Ives, 162 Conn. 274, 294 A.2d 67 (1972); State v. Brown, 94 Idaho 352, 487 P.2d 946 (1971) (court prefers that instruction be given along with others prior to deliberations); State v. Oswald, 197 Kan. 251, 417 P.2d 261 (1966), but the court at a minimum disclosed mixed reservations concerning the *Allen* charge and has approved use of the ABA instructions, State v. Scruggs, 206 Kan. 423, 479 P.2d 886 (1971); People v. Coleman, 21 Mich.App. 193, 175 N.W.2d 308 (1970); State v. Cranford,

83 N.M. 294, 491 P.2d 511 (1971), cert. denied, 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972); Simmons v. State, 198 Tenn. 587, 281 S.W.2d 487 (1955); Poindexter v. Commonwealth, 213 Va. 212, 191 S.E.2d 200 (1972); State v. Parker, 79 Wash.2d 326, 485 P.2d 60 (1971) (5–2; *en banc*) (minority not singled out and court recommends instruction be given with others prior to deliberations).

6. *See also* its more recent opinion in United States v. Silvern, 484 F.2d 879 (7th Cir. 1973) (*en banc*).

cuit did the same ten days later "on the basis of the potential for prejudice its future use may generate and the profound difficulty in confining its use within just and equitable bounds." United States v. Fioravanti, 412 F.2d 407 (3rd Cir.), cert. denied sub nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969). This order was subsequently enforced and trial courts were restricted to the ABA charge set out in the majority opinion in this case (note 2). Government of Virgin Islands v. Hernandez, 476 F.2d 791 (3rd Cir. 1973). The District of Columbia Circuit later adopted the ABA Standard to the exclusion of the *Allen* charge. United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971) (*en banc*). The First Circuit ameliorated the *Allen* charge by requiring that "[w]henever a court instructs jurors to reexamine their positions, it should expressly address its remarks to the majority as well as to the minority." That court also expressly disapproved any admonition to the jury that the case *must* at some time be decided and required that the jury be reminded of the burden of proof. United States v. Flannery, 451 F.2d 880 (1st Cir. 1971). Subsequently the court offered an instruction based on the ABA model which it considered to be consistent with *Flannery*. United States v. Angiulo, 485 F.2d 37, 40 n. 3 (1st Cir. 1973).[7]

Except among the affirmative supporters of the "dynamite charge," a principal point of debate is whether the trial judge may properly exert any pressure on a jury to obtain a verdict. One school argues that once the *Allen* charge is abandoned the ABA charge should be adopted and with no modifications.[8] They say that if the ABA charge is modified the courts will have the same problem back again, that is, determining whether the ABA charge as modified by the trial judge spilled over into coercion.[9] On the other hand, it is evident that a trial judge's hands should be left free to fit instructions to particular circumstances.

Both points of view have merit. But I do not subscribe to the "all or nothing" approach to the ABA charge. Primarily, this is because I think that while the "dynamite" of the *Allen* charge was unjustifiable there is a legitimate public interest warranting some effort to determine if a jury verdict is reasonably attainable. I think a judicious reminder to a deadlocked jury that a verdict is desirable, if within reason, should be left to the option of the trial

---

7. As indicated, other circuits continue to allow use of the *Allen* charge. United States v. Domenech, 476 F.2d 1229 (2d Cir.), cert. denied, 414 U.S. 80, 94 S.Ct. 95 38 L.Ed.2d 77 (1973); United States v. Davis, 481 F.2d 425 (4th Cir.), cert. denied, 414 U.S. 977, 94 S.Ct. 296, 38 L.Ed.2d 220 (1973) (trial judges urged to consider use of ABA charge; Sobeloff, Senior Judge would have done away with *Allen*); United States v. Bailey, 480 F.2d 518 (5th Cir. 1973) (9–6; en banc); United States v. Harris, 391 F.2d 348 (6th Cir.), cert. denied, 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968); United States v. Skillman, 442 F.2d 542 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); United States v. Contreras, 463 F.2d 773 (9th Cir. 1972); Munroe v. United States, 424 F.2d 243 (10th Cir. 1970) (*en banc*) (recommends *Allen* be given at beginning of deliberations and that ABA Standards safeguard against potential taint of coercion). While the trend in the circuit courts is not as pronounced as the national trend, the tempo seems to be increasing.

8. *E. g.*, United States v. Silvern, *supra*, 484 F.2d at 882–883; Government of Virgin Islands v. Hernandez, *supra*, 476 F.2d at 793; United States v. Thomas, *supra*, 146 U.S.App.D.C. at 112, 449 F.2d at 1188.

9. It has been said that " . . . hung juries are, indeed, an abhorrence to a trial judge whose obligation is to administer the affairs of his court with dispatch as well as even-handed justice. It is probable that no experience is more frustrating to a court than the retrial of somebody's lawsuit. The sensation is somewhat akin to dining on yesterday's cold mashed potatoes." State v. Earsery, 199 Kan. 208, 428 P.2d 794 (1967). Perhaps this is why some judges go beyond the pale in instructing hung juries. If the future shows we still have a different variety of the same old "*Allen* charge problem" with us then I suppose a strictly circumscribed charge is the only remaining alternative.

judge. *If carefully worded and well-timed,* a supplemental charge of this sort will carry with it only a minimal risk of interference with a jury function. Balancing this risk against a substantial benefit to judicial administration, I think such an instruction is desirable.

If it is made clear, in substance, that a verdict is *not being demanded,*[10] and the jurors are being asked to return to the jury room and "try again" without sacrificing conscientiously held convictions, this is in the public interest. Actually, this *encouragement* from the trial judge "may be the only way to persuade any stubborn jurors . . . to rethink their positions."[11]

Turning to the supplemental instruction proposed by the court,[12] while it deletes the controversial reference to the "minority" in the *Allen* charge, it seems to me it may substitute some confusion in its place by specifically addressing itself to "jurors for acquittal" and "jurors for conviction."

I think a balanced instruction is one which essentially incorporates all features of the ABA instruction with a temperate prod by the trial judge for a conscientious attempt at a verdict.[13] A supplemental instruction along this line is attached as an Appendix to this opinion.

*Appendix to Concurring Opinion*

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

You should consider that it is desirable that the case be decided if you can conscientiously do so; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve persons more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on one side or the other.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without sacrificing your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and the reasons for your views, and change your opinion if convinced it is wrong.

But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or only for the purpose of returning a verdict. You are not advocates for either side. You are judges—judges of the facts. Your sole interest is to find the truth from the evidence in the case.

---

10. It is fundamental that a defendant is entitled to the benefit of a disagreement by the jury. On the other hand, it is perfectly apparent that a verdict, if fair, is to be desired. Yet, "[t]he very fact that each member of the jury must be convinced beyond a reasonable doubt of the guilt of the defendant before a conviction can be had evidences the fact that jurors who are not convinced beyond a reasonable doubt of the guilt of the defendant are obligated to sustain their convictions, even if a disagreement is the result."

Potard v. State, 140 Neb. 116, 299 N.W. 362, 364 (1941).

11. *Note,* Supplemental Jury Charges Urging a Verdict, 56 Minn.L.Rev. 1199, 1209 (1972).

12. See the Appendix to the majority opinion.

13. This assumes, of course, that the timing and circumstances are propitious for a supplemental instruction. If these elements are lacking, a supplemental instruction may well be harmful.