*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CF-790

RONALD O. DOUGLAS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-4890-09)

(Hon. Florence Pan, Trial Judge)

(Argued October 2, 2013                               Decided August 21, 2014)

*R. Michael Labelle* for appellant.

*Sharon Sprague*, Assistant United States Attorney, with whom *Ronald C. Machen*, United States Attorney, and *Elizabeth Trosman*, Assistant United States Attorney, were on the brief, for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and FARRELL, *Senior Judge*.

BECKWITH, *Associate Judge*: A jury convicted appellant Ronald Douglas of possession with intent to distribute (PWID) marijuana.[1] Mr. Douglas now challenges that conviction, contending, among other things, that the trial court

---

[1] D.C. Code § 48-904.01 (a)(1) (2001).

unduly coerced the jury by instructing it to reconsider the PWID charge after it twice stated it could not reach a unanimous verdict on that charge and went on, pursuant to the "reasonable efforts" instruction it was given, to find Mr. Douglas guilty of the lesser offense of possession of marijuana. We hold that under our decision in *Jackson v. United States*, 683 A.2d 1379 (D.C. 1996), when a jury has stated or implied by its action that it cannot reach a verdict on a greater charge despite reasonable efforts to do so, and then gone on to reach a verdict on the lesser charge, a trial court may direct the jury to continue deliberating on the greater charge only if it is not persuaded that the jury exercised reasonable efforts in trying to reach a verdict. As the record here is devoid of any clear indication that the trial judge thought the jury had not worked hard enough to reach a verdict on the greater count before moving on—on the judge's explicit instructions—to consider the lesser offense, the court should have discharged the jury after taking its verdict on possession. We reverse Mr. Douglas's PWID conviction and remand with instructions to enter judgment against Mr. Douglas on the lesser included possession offense.

**I.**

According to the evidence at trial,[2] on February 28, 2009, three Metropolitan Police Department (MPD) officers patrolling in a police cruiser saw a Cadillac turn left off of 14th Street N.W. onto Upshur Street without using its turn signal. Officer Matthew Jones, the driver of the police cruiser, activated the police car's lights and siren, followed the Cadillac onto Upshur Street, and initiated a traffic stop. As Officer Jones approached the driver's side and Officer Brian Hallahan approached the passenger's side of the Cadillac, both could smell fresh unburnt marijuana coming from the car.

The car's driver, appellant Ronald Douglas, told Officer Jones that his license was suspended. The car had two other occupants: a woman in the passenger seat and a man in the back seat behind her. As Officer Jones was stepping Mr. Douglas out of the car and placing him in handcuffs, Officer Hallahan alerted Officer Jones that he saw some loose marijuana on the floorboard by the feet of the back seat passenger. Police then stepped the two passengers out of the car and all three sat on the curb while Officer Hallahan searched the car and found two bags of marijuana underneath the steering column above the brake and gas pedals. A chemist and an MPD narcotics expert testified that the substance

---

[2] Prior to trial, the trial court held a suppression hearing and ultimately denied Ronald Douglas's motion to suppress evidence. We address Mr. Douglas's challenge to that ruling *infra* at footnote 13.

recovered from the steering column was .95 pounds of marijuana and had a street value of $5,310.

The trial court instructed the jury on PWID and—at Mr. Douglas's request—the lesser included offense of possession of a controlled substance. On April 8, 2011, the jury found Mr. Douglas guilty of possession of marijuana, and the judge directed the jury to deliberate further on the greater charge of PWID, which it had been unable initially to agree on. On April 11, 2011, the jury found Mr. Douglas guilty of that charge as well.

## II.

On appeal, Ronald Douglas argues, among other things, that the trial court erred by ordering the jury to continue deliberating on the greater charge of PWID, after an anti-deadlock instruction, when the jury had twice indicated it could not reach a verdict on that count and then had gone on to convict Mr. Douglas of the lesser offense of possession of marijuana. The government counters that this court's decision in *Jackson* makes clear that the trial court had discretion to order further deliberations on the greater charge after a jury instructed on reasonable efforts reached a verdict on the lesser charge.

**A. Instructions and Deliberations**

In its final instructions to the jury on Thursday, April 7, the trial court, at Mr. Douglas's request, recited a "reasonable efforts" instruction, stating that the jury should "first consider" whether Mr. Douglas was guilty of PWID and whether the amount of marijuana was greater than half a pound, and then, "[i]f after making all reasonable efforts to reach a verdict on possession with intent to distribute and on whether the amount was greater than a half a pound you are not able to do so, then you are allowed to consider possession of a controlled substance."[3]   The case went to the jury around lunchtime, and at 4:23 p.m. that day, the jury submitted a note that stated, "We are unable to reach unanimity on the first item, possession with intent to distribute."  After a brief conference with counsel, the court, noting that "I don't even think they've made a reasonable effort yet, frankly, at two hours and 50 minutes," instructed the jury:

> You have not been deliberating very long at all for a jury considering the trial that you just saw.  And so, what I'm going to instruct you to do now is to break for the evening, go home, get a good night's sleep, come back at 9:30 in the morning and make your best efforts to resume your deliberations tomorrow and keep going.  At this point it's just very early in the process, and I think we should just take a break and start fresh in the morning.

---

[3] *See* Criminal Jury Instructions for the District of Columbia, No. 2.401 (5th ed. rev. 2013).

The jury returned to the jury room and sent the judge a note asking, "If we reach a decision tomorrow, will we be coming in on Monday?" The court responded, "If you reach a decision tomorrow you will not come back on Monday," and excused the jury for the day.

On the morning of Friday, April 8, at 10:52 a.m., the jury submitted another note that read, "We are unable to reach a unanimous decision on 'possession with intent.' Can we proceed to the second count of 'possession'?" After a discussion with counsel about the "reasonable efforts" instruction, the court instructed the jury, "If you have exercised reasonable efforts and are unable to reach a unanimous verdict on possession with intent, you may consider the charge of possession." Less than an hour later, the jury notified the court that it had reached a unanimous verdict on the lesser marijuana possession charge.

At this point, the trial court stated its inclination to order the jury to go back to the greater charge of PWID and keep trying to reach a verdict on that charge. Defense counsel strongly objected to this course, calling it "counterintuitive" and nonsensical to give the jury an anti-deadlock instruction on the PWID count after it had exhausted reasonable efforts to reach unanimity on that count and moved on to the lesser offense.

The trial court disagreed: "I see it beneficial to judicial economy to attempt

to get a unanimous verdict[.]" In the trial court's view, "the case law is clear," and this court's decision in *Jackson v. United States*, 683 A.2d 1379, in particular, stands for the proposition "that the court has discretion to order additional deliberations after a reasonable efforts instruction has been given and a verdict has been reached on the lesser." While the court thought it "more prudent" to give Mr. Douglas's jury the milder "Gallagher" anti-deadlock instruction,[4] it concluded firmly that the law allowed it to order the jury to keep trying to get a verdict on PWID.

After the court took the jury's verdict on the lesser possession charge—a guilty verdict—it then read the jury a Gallagher instruction and ordered it to go back to deliberating on the greater count.[5] The jurors deliberated that afternoon for

---

[4] In *Winters v. United States*, 317 A.2d 530, 534 (D.C. 1974) (en banc), we announced the "*Winters* instruction," a "highwater mark for an anti-deadlock charge" that trial court judges may use to instruct a deadlocked jury. We noted that judges could, depending on the circumstances, use less emphatic instructions. *Id.* In a concurrence, Judge Gallagher set forth an alternative milder charge, now known as the "Gallagher instruction." *Id.* at 534-39 (Gallagher, J., concurring); *see also* Criminal Jury Instructions for the District of Columbia, No. 2.601 (5th ed. rev. 2013).

[5] The court instructed:

> Ladies and gentlemen, thank you for your hard work in this case. I understand from previous notes that you sent me that you were unable to reach a unanimous verdict on the greater charge in this case, which was possession with intent to distribute marijuana. I want to give you

(continued…)

roughly another two hours and fifteen minutes. The court dismissed the jurors for the weekend at 4:45 p.m. that day, and when they returned on Monday they

---

(…continued)

some further instruction on that charge at this time. Your verdict on that charge must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. Your verdict should be unanimous. You should consider that it is desirable that the case be decided if you can conscientiously do so, that you were selected in the same manner and from the same source which any future jury must be. There's no reason to suppose that the case will ever be submitted to 12 persons more intelligent, more impartial, or more competent to decide it, nor to suppose that more or clearer evidence will be produced on one side or the other. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without sacrificing your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations do not hesitate to reexamine your own views and the reasons for your views and to change your opinion, if convinced that it is wrong, but do not surrender your honest conviction as to the weight and effect of the evidence because of the opinion of your fellow jurors solely for the purpose of returning a verdict. You are not advocates for either side, you are judges, judges of the facts. Your sole interest should be to reach a just verdict in the evidence in the case. With that instruction I'm going to instruct you to go back and deliberate on the greater charge at this time. Thank you.

deliberated until they found Mr. Douglas guilty of PWID at 2:30 p.m.

**B. Standard of Review**

We generally review for abuse of discretion a trial judge's rulings regarding whether to accept a verdict on a lesser offense and reinstruct the jury. *Wilson v. United States*, 922 A.2d 1192, 1195 (D.C. 2007). Whether the trial court applied the correct legal standard is a question of law that we consider de novo. *See Davis v. United States*, 564 A.2d 31, 35 (D.C. 1989) (en banc).

The government argues, at the outset, that we should not consider Mr. Douglas's claim of instructional error because near the end of the prolonged discussion among the court and the lawyers about whether the court could allow the jury to return to the greater offense of PWID, defense counsel appeared to concede—albeit on mistaken grounds—that this court's decision in *Allen v. United States*, 755 A.2d 402 (D.C. 2000), allowed the court to order further deliberations on PWID. We disagree that defense counsel's statement that she was "satisfied" that *Allen* allowed reinstruction precludes appellate review of the legal claim. Defense counsel objected vehemently and persistently to the trial court's decision to force further deliberations on the greater count. Counsel lost the argument, though, and the trial court, stating that it was "confident that the law supports" the court's intended reinstruction and that "the case law is very clear," noted counsel's

objection for the record and prepared to instruct the jury to deliberate again on the greater charge. When defense counsel pleaded for more time to research the issue, the trial court at first denied that request—indicating again that it viewed *Jackson* as clearly allowing this way of proceeding and that it did not want to keep the jury waiting—but ultimately agreed to break for lunch before reinstructing the jurors.

We do not think defense counsel foreclosed review of this claim when she returned from the lunch break and expressed a legally unfounded belief—echoing a similar statement the prosecutor made earlier—that *Allen* allowed the court to reinstruct the jury on PWID.[6] First, defense counsel appeared to back away from her already reluctant statement that *Allen* authorized the court to order further deliberations on PWID, stating that she had only "reviewed the case law briefly," that she still believed it was "strange to reinstruct," and that "the whole process is awkward" and "counterintuitive." Second, the trial judge herself—who noted that she was the prosecutor who had briefed and argued *Allen* on appeal—understood that contrary to both the prosecutor's and defense counsel's statements, *Allen* did not answer the question whether the court could reinstruct on the greater under the

---

[6] Prior to defense counsel's statement, the prosecutor likewise incorrectly described our decision in *Allen* as deeming it "permissible" for the trial court to send a jury "back after reaching a verdict on the lesser to continue considering the greater."

circumstances at issue here.[7] As the judge stated, "it's clear that if there is a mistrial on the greater, they certainly can re-try them"—the central holding of *Allen*, 755 A.2d at 410-12—but this case is "a little bit different from both *Allen* and *Jackson*[.]" Given that the judge grappled with counsel's many objections, that she was unmoved by defense counsel's eventual reliance upon *Allen* and instead ruled on entirely independent grounds, and that she had determined to rule well before counsel's about-face, we are unwilling to treat counsel's statement about *Allen* as precluding our review of this claim. *See Abdus-Price v. United States*, 873 A.2d 326, 332 n.7 (D.C. 2005) (stating that we may properly address a claim "even if [it] was not pressed below . . . so long as it was passed upon") (quoting *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33-34 n.3 (D.C. 2001)).

---

[7] In *Allen*, as in the present case, the trial court directed the jury to continue deliberating on the greater charge after reaching a verdict on the lesser, but unlike in this case, the jury did not reach a verdict on the greater and the judge eventually granted a mistrial on that count. 755 A.2d at 405. *Allen* arose from a government appeal after the government sought to retry Mr. Allen on the greater charge and the trial court ruled that the prosecution was barred by double jeopardy—a ruling we reversed. *Id.* at 412. At the first trial, Mr. Allen had objected to the court's decision to order continuing deliberations on the greater charge, *id.* at 405, but the jury never convicted Mr. Allen of that charge, so Mr. Allen did not challenge the reinstruction on appeal, and in the government's appeal in the attempted retrial, this court had no occasion to address whether the trial court instruction that the jury keep deliberating on the greater count was unduly coercive.

**C. Analysis**

Relying on our decision in *Jackson v. United States*, 683 A.2d 1379, the trial court in this case concluded as a matter of law that it had discretion to order the jury to resume deliberations on a greater count after it reached a verdict on the lesser. Such discretion undoubtedly exists in circumstances akin to those in *Jackson.* In that case, as here, Mr. Jackson was charged with PWID, and the trial court accommodated his requests to instruct the jury on the lesser included offense of possession and to direct the jurors to proceed to that lesser offense if, after making "all reasonable efforts," they were unable to agree on the PWID charge. *Id.* at 1381. After deliberating for less than four hours, the jury alerted the court that it was unable to agree on the greater offense but that it had reached a verdict on the lesser included charge. *Id.* at 1381.

Contrary to the jury's own view that it had exercised reasonable efforts in trying to resolve the greater charge, the trial court in *Jackson* stated that it was still "pretty early," that if "this had been 2 days down the road . . . I would [accept the lesser verdicts and discharge the jury]," and that it had "no way of knowing whether this jury has truly exhausted all reasonable efforts." *Id*. at 1384 n.11 (alteration in original). We affirmed the trial judge's decision to require further deliberations based on his plainly articulated doubt that the jury had truly

exhausted all reasonable efforts before moving on to consider the lesser offense. *Id*. at 1383. We said that a judge is not bound to accept a verdict on a lesser offense "when the judge is not convinced that the jury has yet discharged their duty to make all reasonable efforts to reach a verdict on the greater offense." *Id.*

When a jury *has* exercised reasonable efforts, however, the risk of coercion is great, and the court's job is clear. "Under reasonable efforts the jury has 'done its job' when it has made all reasonable efforts to agree on the greater offense and has reached a verdict on the lesser offense." *Id.* At that point, "the trial court should . . . accept the verdict and discharge the jury." *Id*.

The record in the present case contains marked signals that the trial court viewed itself as having discretion that went beyond the facts of *Jackson*— discretion, that is, to order the jury to deliberate further on the greater offense whether it had made reasonable efforts or not during its initial round of deliberations on that charge. In the course of the colloquy with the prosecutor and defense counsel about whether to issue a *Winters* instruction if the jury returned with a verdict on the lesser offense, the court assumed reasonable efforts had been exhausted and framed the question as a legal one: may the court deliver an anti-deadlock instruction to a jury that has failed, *after using all reasonable efforts*, to arrive at a verdict on the greater offense, after approving the jury's decision to

move on to the lesser offense and accepting a verdict from the jury on that count? Unswayed by defense counsel's repeated statements that allowing the jury to resume deliberations on the greater count "makes no sense," the trial court indicated that while the reasonable efforts instruction had served a significant purpose during the jury's initial deliberations, it did not restrict the court's authority to try to avert a mistrial.[8] In the trial court's view, "the whole thing about reasonable efforts versus acquittal first is a discussion about jury dynamics and, you know, compromise and these things. And once you've already had the benefit of reasonable efforts in that, I don't see why you wouldn't then, before declaring a mistrial, Winterize[9] on the greater offense."

It appears from this language that the trial court construed too broadly its authority to seek to avoid a mistrial by ordering a jury that had already exhausted reasonable efforts to further deliberate on the greater count. But regardless of the judge's thinking, the record is clearly lacking the necessary signs that the trial

---

[8] The judge stated that a defendant "gets to choose" a reasonable efforts instruction "because some people think it's coercive of the jury to say that you have to reach a verdict on the first count first before you get to the second." That "consideration is removed," however, "once we've already done reasonable efforts, they've gone to the lesser included, they've reached a verdict on that." At that point, the judge wondered, "What is the reason then for not then trying to get a verdict on the greater count. It would save court resources."

[9] The court is referring to the anti-deadlock instruction approved by this court in *Winters v. United States*, 317 A.2d 530 (D.C. 1974). *See supra* note 4.

court believed the jury had *not* exercised reasonable efforts when initially wrestling with the PWID charge. *Jackson* confirms that it is impermissibly coercive to send the jury back for further deliberations when the judge assumes or has decided that the jury has already exercised reasonable efforts.[10] Thus, before a judge may make a jury continue deliberating on a greater charge where that jury has said or implied by its action that it cannot reach a verdict on the greater charge despite reasonable efforts to do so, the judge must be unpersuaded—and the record must make clear that she is unpersuaded—that the jury has, in fact, applied reasonable efforts to the decision. *Id.* at 1383.

There are many hints in the record that the court likely assumed the jury *had* made reasonable efforts,[11] several indications that it viewed such a determination

---

[10] We have acknowledged this coercive potential even where the trial court concludes that the jury has not yet expended reasonable efforts. When the jury believes it has exhausted all reasonable efforts and the trial court, disagreeing with the jury's self-assessment, still orders it to further deliberate on the greater charge, "a danger exists that, from the jury's perspective, the trial court may appear to be withdrawing the reasonable efforts instruction and insisting upon a verdict on the greater offense." *Jackson*, 683 A.2d at 1384-85. This risk could be mitigated by "[a]n additional instruction" that "explained to the jury the court's obligation to ensure that the jury has exhausted all reasonable efforts, and that the court believed that further efforts were warranted in this case." *Id.* at 1385.

[11] After the jury's second deadlock note, for example, the court stated that "the answer" to the question whether the jury could go on to consider the lesser offense was "obviously yes, because we gave a reasonable efforts instruction," a comment the court presumably would not have made if it believed the jury had not

(continued…)

as unnecessary,[12] and no indications that the court unmistakably viewed the jury as having *not* exercised reasonable efforts. Significantly, this was not a situation like that in *Jackson*, where the jury jumped straight to a verdict on the lesser offense without notifying the judge of any deadlock on the greater or seeking its guidance about whether it was appropriate to move on. Here, we glean from the record ample grounds for the court to have inferred that the jury used reasonable efforts, given that the jury twice sent notes indicating it was deadlocked during the more than four hours it initially deliberated on the PWID charge and given that Mr. Douglas's was a relatively uncomplicated trial featuring two arresting officers and some brief expert testimony regarding the weight, street value, and intended use of the marijuana found in the car. Even if the court did not conclude the jury had

---

(…continued)
yet exercised reasonable efforts. The same is true of the court's statements that "we're in a reasonable efforts world," that "the answer to this note is clearly yes," and that "I'm saying right now they have exercised reasonable efforts, they're moving on to possession." These statements stand in contrast to the court's description of the state of the jury's deliberations at the time of its first deadlock note, when the court stated that it was "just very early in the process" and the jury had "not been deliberating very long at all." The court's decision to give an anti-deadlock instruction to get the jury restarted on the PWID count also tends to suggest she viewed the jury as having exercised reasonable efforts during its initial deliberations, as does the fact that she chose the milder Gallagher instruction instead of the "dynamite" *Winters* charge "because they said twice that they were not able to reach a verdict on the greater" and they said they expended reasonable efforts."

[12] *See supra* note 8.

exercised reasonable efforts, it plainly did not conclude that the jury had *not* done so. Under *Jackson*, the court committed reversible error by sending the jury to resume deliberations on the greater charge without first determining that it had not exercised reasonable efforts the first time around.[13]

## III.

For the foregoing reasons, we reverse Ronald Douglas's conviction of possession with intent to distribute marijuana and remand so that the trial court may enter a judgment of conviction on the lesser included charge of possession of

---

[13] Because we reverse on this ground, we need not reach Mr. Douglas's claim that the trial court erred in its handling of a juror's midtrial realization that he was familiar with the government's expert witness from a prior trial. The issue will not arise again at any retrial, and as the expert witness testified primarily that the amount of marijuana seized in this case was consistent with distribution, his testimony had no bearing on the jury's verdict on the lesser offense of possession. With respect to Mr. Douglas's remaining challenge to the trial court's denial of his suppression motion—an issue that could come up in a retrial—we review de novo the trial court's determinations that police had reasonable suspicion to stop Mr. Douglas's car and probable cause to search the car, and we affirm the trial court's judgment. While Mr. Douglas argues that his unsignaled left turn did not "affect[]" "other traffic" under 18 DCMR § 2204.3 and that police therefore lacked a basis to stop him, we agree with the trial court's conclusion that the stop of Mr. Douglas's vehicle was valid given the testimony that the police cruiser itself was one or two lengths behind Mr. Douglas's car when it turned left without signaling, and given Officer Jones's testimony that Mr. Douglas's left turn was "just unexpected, because he didn't use the turn signal." We also agree with the trial court that the officers had probable cause to search the car under the automobile exception to the warrant requirement when they observed marijuana in plain view on the back seat floorboard and smelled a strong odor of marijuana emanating from the car. *See, e.g., Minnick v. United States*, 607 A.2d 519 (D.C. 1992).

marijuana.

*So ordered.*