Robert L. **EPPERSON**, Appellant,

v.

**UNITED STATES**, Appellee.

**No. 81–332.**

District of Columbia Court of Appeals.

Reargued June 20, 1984.

Decided July 24, 1985.

Edward N. Leavy, Washington, D.C., appointed by this court, for appellant.

Judith Hetherton, Asst. U.S. Atty., Washington, D.C., with whom Joseph diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the pleadings, for appellee.

Before MACK and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

## ON REHEARING

GALLAGHER, Associate Judge, Retired:

In its per curiam decision in this case (*Epperson v. United States*, 471 A.2d 1016 (D.C.1984)), this court held, essentially, that a trial judge should not repeatedly give an "anti-deadlock" instruction to a "hung jury." Sometime later, the government

filed a motion to recall the mandate and to consider its petition for rehearing. Upon the government's representation that, in its view, the court's opinion would have harmful effects "on the administration of justice in this jurisdiction," we recalled the mandate and afforded the parties further opportunity to be heard on the issue.[1]

■■■ Upon reargument, it appears that the government has in some respects misinterpreted our decision in this case. Perhaps we did not elaborate sufficiently because we were simply synthesizing what we felt to be an existing custom among most trial judges in this jurisdiction. First of all, in our earlier opinion we addressed ourselves only to a "hung jury," not just simply a jury.[2] By "hung jury," we mean a jury which the trial judge has concluded is deadlocked, giving due consideration to such things as the nature and complexity of the trial issues, the duration of the trial and the length of the jury deliberations, as well as the representations of the jury to the court about the state of its deliberations. *See Thompson v. United States*, 354 A.2d 848, 851 n. 8 (D.C.1976). If the court decides it has before it a genuinely "hung jury," that is the type of jury to which our decision is addressed. The court should not repeatedly give an "anti-deadlock" instruction to a deadlocked jury,

bearing in mind that a deadlocked jury is one which the trial judge has concluded is genuinely deadlocked, as previously related. It is for the trial judge to resolve this factor.[3]

The government states in its Motion to Recall Mandate that:

> When we considered that the Court had found the mild ABA instruction [*see infra* ] . . . to be the equivalent of a *Winters* charge, and had held that two such charges could not be given, we realize that the safest course for a trial judge to take under the holding was initially *to refrain from giving any guidance to a jury which announces itself deadlocked* and simply allow the deliberations to continue, *no matter how premature or ambiguous the announcement of deadlock may be.* Only after a substantial amount of time had passed and the jury had still not reached a verdict should any instruction be given. Then, the strongest charge possible—the *Winters* charge—should be given, since *the judge will be able to address the jurors only once.* [Emphasis added.]

■ The court's decision was concerned only with the matter of anti-deadlock instructions to a "hung jury." That being the case, the government's reference to instances "no matter how premature or

---

1. Actually, at the trial level the prosecutor had an approach in this case with which we find no fault. When after one hour of deliberation, the jury notified the court it could not reach a unanimous verdict, the court asked the position of the parties. The prosecutor stated: "The government would, at this time, unless we are hopelessly deadlocked, *continue the deliberations.*" (Emphasis added.)

 After a colloquy, the court rejected the government's approach and decided to give the American Bar Association (ABA) anti-deadlock instruction (*see infra* ). When the jury later notified the court that it was still hung, the government then suggested it be given the *Winters* anti-deadlock charge (*see Winters v. United States*, 317 A.2d 530, 534 (D.C.1974) (en banc)). This was done, over objection, and this time a verdict of guilty was returned.

2. It seems almost too obvious to mention that trial judges routinely send juries back for further deliberation who prematurely send a message to the court that they are unable to reach a verdict. Juries are known to deliberate for an hour or so and send such a message. This ordinarily is not a genuinely "hung jury" at this point.

3. From a distance, one would have had to have misgivings about whether the jury in this case was deadlocked since it appears to have been rather precipitous in returning to the trial judge so soon. Be that as it may, the trial judge appears to have considered it to be a "hung jury," and as indicated, this is ordinarily a trial court determination. So, for the purposes of this case there was then a "hung jury" when the first anti-deadlock (the ABA) instruction was given.

ambiguous the announcement of deadlock may be" immediately takes the question out of the category of a genuinely "hung jury" and consequently outside the ambit of the court's opinion. The same would hold true of the government's apprehension that the court may not give the jury any "guidance." The court's opinion is restricted to "anti-deadlock" instructions to a jury which the *court* has concluded is a genuinely "hung jury." Naturally, as we point out in this opinion, it would not foreclose a judicial response to a request for guidance by a jury, nor, for example, would it foreclose a repetition of a "hung jury" instruction to a jury which indicates it did not understand the first "hung jury" instruction. While these things may seem obvious, it is just as well to point them out as a matter of caution.

■ Which "anti-deadlock" instruction it gives is in the discretion of the trial judge. One can mention three instructions of this nature in use in this jurisdiction: (a) the American Bar Association suggested anti-deadlock instruction, American Bar Association Standards for Criminal Justice, No. 15–44 (2d ed. 1980); (b) the instruction suggested by this court in *Winters, supra* note 1; and (c) the instruction suggested in the concurring opinion in *Winters, supra.* While they vary to some degree, all are directed toward "hung juries." These instructions all came into existence in relation to the nationwide movement[4] of courts to abandon the so-called "dynamite charge" known as the *Allen* charge,[5] and were designed as substitutes for the *Allen* charge. *See, e.g., Winters, supra.*

As we have indicated, in requesting rehearing it appears the government may have misinterpreted our opinion as not being restricted to "anti-deadlock" instructions to "hung juries." For instance, the government in support of rehearing cites us to decisions such as *United States v. Washington,* 144 U.S.App.D.C. 338, 340–41, 447 F.2d 308, 310–11 (1970), and *Ful-*

*wood v. United States,* 125 U.S.App.D.C. 183, 369 F.2d 960 (1966), *cert. denied,* 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996 (1967). Those cases are cited to us for the proposition that a trial court may instruct a "hung jury" more than once. In those cases, however, the courts referred to a hung jury instruction given *before* the jury commences its deliberation. This is hardly then an instruction to a "hung jury." Those decisions held the court may properly give the instruction again after the jury *actually* becomes "deadlocked."

It is evident that those decisions have no application here. We are addressing ourselves entirely toward a practice of repeatedly giving "anti-deadlock" instructions to a "hung jury." A jury can hardly be hung before it begins deliberations. Consequently, that line of cases does not assist us here.

When the nationwide trend toward abolition of the "dynamite charge" (the *Allen* charge) began, it was apparent that in the public interest there should be a substitute instruction directed at breaking the deadlock when a jury becomes "hung." The first nationwide anti-deadlock instruction to supplant the *Allen* charge was the American Bar Association (ABA) suggested instruction for this purpose, to which we have referred. It seems quite plain that while it does not contain the "dynamite" of the *Allen* charge, it is nevertheless regarded nationally as an "anti-deadlock" instruction and was so intended by the ABA. *See Winters, supra,* 317 A.2d at 534–39 (concurring opinion). We say this because there seems to be a misunderstanding to the effect that since the American Bar Association instruction is more moderate than the *Allen* charge, for example, this means it is not an anti-deadlock instruction or, if it is, the court should be able to repeat an anti-deadlock instruction to a hung jury and, in so doing, graduate to a stronger "anti-deadlock" instruction the succeeding

---

4. *See Winters, supra,* 317 A.2d at 534–39 (Gallagher, J., concurring).

5. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

time (or times). This would be another avenue back to the disapproved situation in this jurisdiction resulting from the previously rejected *Allen* charge. By disapproved situation, we mean instances where the integrity of jury verdicts were in question due to the unwise coercive elements of the *Allen* charge.

In 1971, the federal circuit court for this jurisdiction, among other courts throughout the country (state and federal), made clear that the ABA charge is a hung jury instruction. Speaking for the court, now Chief Judge Robinson said:

> [W]e conclude that ... future rendition of *Allen*-type charges [6] must conform to the standard which has been approved by the American Bar Association and adopted by the Third and Seventh Circuits.

*United States v. Thomas*, 146 U.S.App. D.C. 101, 103, 449 F.2d 1177 (1971) (en banc) (footnote omitted).

■■ It is elementary that a defendant is entitled to a jury in disagreement. It is in the public interest, however, that a jury reach a verdict if it can reasonably do so. Moreover, it is fundamental that a trial judge may not coerce a verdict. It is also apparent that a trial judge should give a temperate prod to a "hung jury" so as to bring out a verdict. It is our view, however, that to repeatedly give "anti-deadlock" instructions to a "hung" jury may well coerce a verdict from the jury. For this reason, we conclude that a jury believed by the trial judge to be "hung," as we related earlier in this opinion, should ordinarily be given an "anti-deadlock" instruction only once.[7] As the court stated in *United States v. Seawell*, 550 F.2d 1159, 1163 (9th Cir.1977):

> Repetition of the charge, together with rejection of the jury's second report of

deadlock, is almost certain to convey the thought that by failing to come to an agreement—by once again reporting themselves at impasse—the jurors have acted contrary to the earlier instruction as that instruction was properly understood. ("Apparently you didn't listen to what I said before, so I'll repeat it.") Given a second time, *not at the request of the jury but at the instance of the judge,* the charge no longer serves as an instruction; no matter how it may be softened it becomes a lecture sounding in reproof. [Emphasis added.]

*See also United States v. Fossler,* 597 F.2d 478 (5th Cir.1979) (reversed on ground that trial judge erred in twice giving anti-deadlock instruction to hung jury). The Ninth Circuit in *Seawell* went on to say:

> On those rare occasions when the use of two Allen charges has been upheld by other courts the second charge was at the request of the jury, United States v. Kahaner, 317 F.2d 459, 484 (2d Cir.), cert. denied, 375 U.S. 836 [84 S.Ct. 73, 11 L.Ed.2d 65], reh. denied, 375 U.S. 926 [84 S.Ct. 263, 11 L.Ed.2d 169] (1963); White v. United States, 279 F.2d 740, 750 (4th Cir.), cert. denied, 364 U.S. 850 [81 S.Ct. 96, 5 L.Ed.2d 74] (1960); or the first charge was a part of the general jury instructions delivered before the jury had begun its deliberations and thus was not in response to a report of deadlock. United States v. Washington, 144 U.S.App.D.C. 338, [340], 447 F.2d 308, 310 (1970). Moreover, the vitality of these decisions might seriously be questioned. The first two decisions were rendered well before federal courts of appeals began to prohibit the use of the Allen charge and the third decision no longer represents the law of its circuit....

---

6. We assume it is not open to question that the *Allen*-type charge is a "hung jury" instruction.

7. As we stated earlier, we are not inferring that if a jury indicates it did not understand the first "anti-deadlock" instruction it may not again be so instructed in an effort to bring understanding

of the charge; nor are we inferring that a jury request for guidance should be denied. These are matters of common sense. Perhaps there will be arising other such compelling factual situations in the future.

*Seawell, supra,* 550 F.2d at 1163 n. 10 (emphasis added).

It must be remembered that *in this jurisdiction* the trial judges have been enjoined not to give the *Allen* charge to a "hung jury" *even once,* let alone repeatedly. In our en banc decision in *Winters, supra,* exercising its supervisory power, this court adopted an instruction in place of the *Allen* charge, and disapproved the future use of the latter charge. The United States Circuit Court for this jurisdiction had previously abandoned the *Allen* charge, *United States v. Thomas, supra,* 146 U.S.App.D.C. at 103, 449 F.2d at 1179.

This court in *Winters, supra,* specifically stated it was there setting "the high water mark for an anti-deadlock charge," 317 A.2d at 534. What this means is, the court laid out its approval charge but left discretion with the trial judges to fashion their own anti-deadlock instructions as long as they do not exceed in pressure for a verdict the *Winters* charge, while excluding the *Allen* charge and similar "dynamite" type anti-deadlock instructions. In addition to the *Winters* charge, this left for approved usage the ABA anti-deadlock instruction and the instruction in the *Winters* concurring opinion, among others. While the dissent in this case refers to the ABA instruction as being dubiously "an anti-deadlock charge," the dissenting opinion stands

alone in this view. The ABA charge was fashioned to be, and is nationally regarded by the courts and scholars, as being an anti-deadlock instruction.[8] It matters not whether it is given before deliberation or after a trial judge concludes the jury is genuinely "hung," the instruction is addressed to a "hung jury" situation. When it is given before a jury begins deliberation it is thought by some to be potentially educational if the jury later approaches a deadlock. What the actual benefit may be to a jury when instructed in this matter prior to deliberation is a matter for speculation. It certainly can do no harm and may conceivably head off a "hung jury" situation later on.[9]

 An instructional error which materially affects a jury verdict, is not an error to pass off lightly. If the integrity of a jury verdict is called into question to the extent that error is found, it is rarely amenable to a finding of harmlessness. We conclude a trial judge should not repeatedly give an anti-deadlock instruction to a "hung jury" after it has already been given an "anti-deadlock" instruction when the court decided it was actually a "hung" jury.[10] Only if there are extenuating circumstances, *e.g.,* if there is confusion and there is a request by the "hung jury" for a repetition of the anti-deadlock instruction, as previously related, or there is some ex-

**8.** *See, e.g.,* cases cited in *Winters, supra,* 317 A.2d at 536–38 (concurring opinion).

**9.** The dissent points us to *United States v. Taliaferro,* 558 F.2d 724 (4th Cir.1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 734, 54 L.Ed.2d 761 (1978); *United States v. Fossler, supra,* 597 F.2d at 478, and *United States v. Robinson,* 560 F.2d 507 (2d Cir.1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). We find those authorities unpersuasive here.

In *Taliaferro* the record is not exemplary. After being more than generous in the number of "anti-deadlock" instructions, the trial judge then sent the jury to dinner at a private club, instructed them that they could continue deliberations during dinner *and authorized alcoholic beverages with dinner.* The jury announced a verdict fifteen minutes after returning to court. We find the decision affirming in *Taliaferro* rather unimpressive.

In *Fossler,* we are puzzled by the dissents' reliance because the court held it was error to repeat the *Allen* charge to the jury.

As to *Robinson,* the jury announced by note an 11–1 split; the note to the trial judge was not revealed to counsel; and the court repeated a modified *Allen* charge, though it was apparent it was necessarily directed at only one juror. We do not find that decision affirming very convincing, especially when one stops to think about the different attitude in this jurisdiction. Here, the *Allen* charge *even once* is disapproved.

**10.** As we have related earlier, a jury is not necessarily a "hung jury" simply because it says it has been unable to reach a unanimous verdict. Some juries make this representation prematurely. It is for the trial judge to decide if, and when, there is a genuine "hung jury."

ceptional circumstance which makes evident it is not likely to be coercive to reinstruct the "hung jury" with another "anti-deadlock" instruction (because of the exceptional circumstance), should an "anti-deadlock" instruction be repeatedly given. Otherwise, repeatedly giving "hung jury" instructions to a "hung jury" risks affecting adversely the integrity of a verdict. This accords with the viewpoint of the courts in this jurisdiction in disapproving the *Allen* charge even once.

■■■ Basically, the majority view in this case is that a trial judge should most certainly try to prod a verdict from a "hung jury," but should do so with a certain moderation to avoid going over the boundary into coercion. Barring exceptional circumstances, such as we have related, repeatedly confronting a genuinely "hung jury" with instructions which most objective observers regard as "anti-deadlock" instructions may endanger the integrity of a jury verdict.

■■■ With the qualifications along the lines we have noted, we hold that an "anti-deadlock" instruction should not repeatedly be given to a "hung jury," as defined. From all that appears, the jury in this case was apparently found by the trial court to be hung when it was given the first "anti-deadlock" instruction (the ABA version). It was error, over objection, to give the second "anti-deadlock" instruction (the *Winters* version). The law (and practice) in this jurisdiction does not admit of this. As this court said in its recent en banc opinion when speaking to an instructional issue, an error which calls "into question the integri-

ty of the verdict" warrants reversal. *Allen v. United States*, 495 A.2d 1145 (D.C.1985) (en banc).

*Reversed.*

FERREN, Associate Judge, dissenting:

After supplementary briefing and argument[1] I now am persuaded that, on the facts of this case,[2] the two anti-deadlock instructions (appended hereto) did not result in prejudicial error requiring reversal.

Basically, the trial court used, first, the ABA or federal instruction[3] and, second, the *Winters*[4] charge. The first instruction is sufficiently uncoercive that the court may use it appropriately in the "original charge" to the jury.[5] Because of this mild language, I believe that the first instruction was appropriate under the circumstances after the jury had deliberated for two hours,[6] and that it did not preclude use of the stronger, *Winters* charge after the jury had deliberated another hour and a half without reaching unanimous verdicts on the three counts submitted.[7]

I.

Appellant was charged with two counts of larceny after trust (Ms. Sullivan and Ms. Smithwick) and one count of larceny by trick (Ms. Daye). After one hour of deliberation, the jury sent a note asking for reinstruction on larceny after trust. The court did so. An hour later, the jury sent a note saying that it "cannot come up with a unanimous decision in the Sullivan case." Defense counsel asked for a mistrial; the prosecutor asked for continued delibera-

---

1. This case originally was submitted on the summary calendar without argument.

2. *Epperson v. United States*, 471 A.2d 1016, 1017 (1984).

3. See ABA, TRIAL BY JURY, Commentary § 5.4 (a), at 146–47 (Approved Draft, 1968); *Jury Instructions and Forms for Federal Criminal Cases*, Instruction 8.11, 27 F.R.D. 39, 97–98 (1961); 1 E. DEVITT & C. BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 18.01 (3d ed. 1977); Criminal Jury Instructions for the District of

Columbia, No. 2.91, Alternative A (1972 & 1978 eds.); *Winters v. United States*, 317 A.2d 530, 531 n. 2 (D.C.1974) (en banc).

4. *Winters*, 317 A.2d at 534; *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir.1973) (en banc).

5. *Winters*, 317 A.2d at 534.

6. *Epperson*, 471 A.2d at 1017.

7. *Id.*

tions unless the jury was "hopelessly dead-locked." When the court said it was not inclined to grant a mistrial and asked counsel whether a *Winters* charge would be appropriate, defense counsel urged the court to give an instruction "short of the *Winters* charge." The court accordingly proposed the ABA/federal instruction and defense counsel agreed. The court then recalled the jury and ascertained that it had not reached a verdict on any of the three charges, not just on the Sullivan case. The court reminded the jury that it had been asked to render three verdicts—to cast three separate, unanimous votes—and then gave the ABA/federal instruction. *See* Appendix.

An hour and a half later, the jury sent another note stating, this time, that it could not reach a unanimous decision "on all three counts." Defense counsel again asked for a mistrial; the prosecutor suggested a *Winters* charge. When the court asked defense counsel whether the *Winters* charge would be inappropriate, counsel replied that it would be too coercive for a "very straightforward misdemeanor" case, and that if the court would not grant a mistrial, it should give the more moderate, "Gallagher instruction," [8] which adds to the ABA/federal instruction a "temperate prod" [9] short of the *Winters* charge. The court instead gave the *Winters* charge. *See* Appendix.

8. *Winters*, 317 A.2d at 539 (Gallagher, J., concurring).

9. *Id.* p. 14.

10. *Compare Nelson v. United States*, 378 A.2d 657, 660–61 (D.C.1977) (no plain error when court, having given modified *"Allen* charge," later gave anti-deadlock instruction, stronger than *Winters* charge, with concurrence of defense counsel).

11. The majority states: "we conclude that a jury believed by the trial judge to be 'hung,' as we related earlier in this opinion, should ordinarily be given an 'anti-deadlock' instruction only once." *Ante* at 1174. The only exceptions justifying the limiting word "ordinarily" are a jury's

Two hours later, the jury returned two guilty verdicts (Sullivan and Smithwick) and one not guilty verdict (Daye).

## II.

The issue on appeal is whether the second *Winters* charge was coercive "in its context and under all the circumstances." *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). On this record, I do not perceive such coercion. Although this is not a case in which defense counsel's acquiescence helped justify a second anti-deadlock instruction,[10] I do not believe counsel's refusal to agree justifies the majority's vote to reverse, let alone its virtually *per se* approach.[11]

The first instruction was very mild, indeed suitable (and recommended) for a court's original charge to the jury, not just for anti-deadlock purposes.[12] As the trial court put it, the instruction was a "light bump," not a "shove." Moreover, although the instruction came after the jury had deliberated for two hours, it is important to note that, for the first hour of deliberations, the jury had been confused by the instruction on larceny after trust and, for the next hour, the jury apparently had focused primarily if not exclusively on only one of the three charges. (Sullivan). Contrary to the majority, therefore, I find it

indication that "it did not understand the first 'hung jury' instruction," *ante* at 1173 or a "request for guidance by a jury," *ante* at 1173, or "some exceptional circumstance which makes [it] evident it is not likely to be coercive to reinstruct the 'hung jury' with another 'anti-deadlock' instruction (because of the exceptional circumstance)." *Ante* at 1175–1176; *see ante* at 1174 n. 7. As a practical matter, therefore, the majority adopts a *per se* rule—only one anti-deadlock instruction—since the proffered exceptions do not authorize trial court discretion to give more than one instruction absent manifest jury confusion about the first instruction or some other undefined, "exceptional circumstance."

12. *Winters*, 317 A.2d at 534; *Silvern*, 484 F.2d at 883.

hard to characterize the situation as a "genuinely 'hung jury.'" *Ante* at 1172.

In sum, the first instruction was not a strong charge, if an anti-deadlock charge at all under the circumstances. It was mildly worded; it came relatively soon—within an hour—after the jury's confusion over the substantive instructions had been resolved; and, at the time the instruction was given, the jury apparently had been considering only one of the three cases submitted. Thus, the first instruction can best be characterized as a supplementary original charge to a jury not long invested in meaningful deliberations, not as an anti-deadlock instruction to a truly hung jury.[13]

This left room, despite defense objection, for one genuine anti-deadlock charge, the *Winters* charge, once the jury reported itself deadlocked—for the first time—on all three counts after an hour and a half of additional deliberation. As I see it, therefore, the trial court took a moderate, responsible approach under the circumstances.

### III.

The majority's virtually *per se* reversible error approach to the two instructions given here is unprecedented. First, my colleagues' heavy reliance on *United States v. Seawell*, 550 F.2d 1159 (9th Cir.1977), *cert. denied*, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978) is misplaced, since that case concerned the use of two, unquestionably coercive "*Allen* charges." Indeed, the Ninth Circuit itself has held that two anti-deadlock instructions are not *per se* reversible error unless both are "*Allen* charges." *United States v. Foster*, 711 F.2d 871, 884 n. 8 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

Moreover, at least three other federal circuit courts of appeal have concluded that the use of two anti-deadlock charges is not *per se* coercive. *United States v. Fossler*, 597 F.2d 478, 485 (5th Cir.1979) (two *Allen* charges over defense objection not *per se* coercive but reversible error under circumstances); *United States v. Robinson*, 560 F.2d 507, 517 (2d Cir.1977) (en banc) (two *Allen*-type charges not *per se* reversible error), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *United States v. Taliaferro*, 558 F.2d 724, 725 (4th Cir. 1977) (two ABA instructions not reversible error), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 734, 54 L.Ed.2d 761 (1978).[14]

Accordingly, I do not understand why the majority, in concluding that the second instruction was too coercive, has insisted on adopting virtually a *per se* approach instead of ruling more specifically on the "context" and "circumstances" here. *Jenkins*, 380 U.S. at 446, 85 S.Ct. at 1060. Routinely, in considering whether a second anti-deadlock instruction was too coercive, the courts consider, for example, the language and length of each instruction, the jury's deliberation time between instructions and thereafter, and the positions taken by defense counsel. *See Fossler*, 597 F.2d at 484–85. Perhaps judges reasonably can differ, on the facts of this case, as to whether reversal is warranted on grounds of jury coercion; but I can see no justification whatsoever for the rigid rule the majority announces today, especially given the mildness of the first instruction.

I am concerned that the majority's virtually *per se* approach, characterizing both instructions as anti-deadlock charges and holding that only one such instruction is

---

13. The majority, too, appears to question whether the jury here was deadlocked at the time of the court's initial (ABA/federal) instruction. *Ante* at 1172 n. 3. Thus, it is not clear why the majority is so ready to characterize it as an anti-deadlock instruction.

14. *See also Silvern*, 484 F.2d at 883 (Seventh Circuit requires inclusion of ABA/federal instruction in original charge to jury as prerequi-

site for giving same charge later as anti-deadlock instruction). The Seventh Circuit has consistently followed the *Silvern* rule. *See United States v. Hamann*, 688 F.2d 507 (7th Cir.1982), *cert. denied*, 460 U.S. 1013, 103 S.Ct. 1255, 75 L.Ed.2d 483 (1983); *United States v. Brown*, 634 F.2d 1069 (7th Cir.1980); *United States v. Gabriel*, 597 F.2d 95 (7th Cir.), *cert. denied*, 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979).

permissible, will provide a disincentive for trial courts to give anything short of a *Winters* charge when the jury reports a deadlock—and may even encourage a *Winters* charge too early in the proceedings.

Respectfully, I dissent.

## APPENDIX

*First Instruction (ABA/Federal)*

Now, of course, the verdict must represent the considered judgment of each juror. In order to return a verdict it is necessary that each juror agree on that verdict. Remember you have three verdicts. It takes three separate votes. You have to vote on each count. So that's three verdicts, not just one, three verdicts. And your verdict must be unanimous as to each of those three. You consider them separately and you vote on the three of them. All right? You have indicated—the reason I'm saying that is because you told me that only about one case, you said the Sullivan case, you cannot reach a unanimous verdict, of course. And I want you to continue your deliberations and vote on the other two as well separately.

Now in connection with your note, it is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement, if you cannot do this without violence to your own individual judgment, each of you must decide the case for yourselves. But do so only after an impartial consideration of the evidence in this case with your fellow jurors. In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if you become convinced that your opinion is erroneous, but do not surrender your honest convictions as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Remember at all times you are not partisans to this case, you are judges, judges of the facts, and your sole interest is to seek the truth from the evidence in this case. And so, ladies and gentlemen, I want to resume your deliberations in connection with the Sullivan case and also in connection with the Smithwick case, as well as the Daye charge, because you have three verdicts to return in this case for three separate offenses, not just the Sullivan case. I want you to go back and consider all three of those. See if you can reach a verdict on any of them.

*Second Instruction (Winters)*

In a large proportion of cases, absolute certainty cannot be attained or expected[.] [A]lthough the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of the other jurors[,] [y]et you should examine the question submitted to you with candor and with proper regard in deference to the opinions of each other. You should consider that it is desirable that this case be decided[;] [t]hat you are selected in the same manner, and from the same source[,] from which any future jury must be selected and there is no reason to suppose that the case will ever be submitted to twelve persons more intelligent, more impartial, or more competent to decide the case, or that more or clearer evidence will be produced on one side or the other.... And with this view[,] it is your duty to decide the case if you can conscientiously do so. You should listen to each other's arguments with a disposition to be convinced. Thus[,] where there is disagreement, jurors for acquittal should consider whether their doubt is a reasonable one which makes no impression upon the minds of others, equally honest, equally intelligent with themselves, and who have heard the same evidence[,] with the same attention, with an equal desire to arrive at the truth[,] and under the sanction of the same oath. And on the other hand, jurors for conviction ought seriously to ask themselves whether they might not reasonably doubt the correctness of a judgment which is not concurred in by others with whom they are associated[,] and distrust the weight or sufficiency of that evidence which fails to carry conviction in the minds of their fellow jurors.