**Robert Vernon BARBETT, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 11–CF–362.

District of Columbia Court of Appeals.

Argued Sept. 11, 2012.
Decided Oct. 11, 2012.

Gregory S. Smith for appellant.

Kenechukwu O. Okocha, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, Chrisellen R. Kolb, and Kimberly Nielson, Assistant United States Attorneys, were on the brief, for appellee.

Before OBERLY and BECKWITH, Associate Judges, and NEBEKER, Senior Judge.

1. D.C.Code § 22–4504(a) (2001).

2. D.C.Code § 22–4503(a)(1) (Supp.2010).

3. D.C.Code § 7–2502.01 (2008).

4. D.C.Code § 7–2506.01(3) (2008).

5. D.C.Code § 23–1328(a)(1) (2001).

6. The trial judge found Mr. Barbett guilty on Count 5.

OBERLY, Associate Judge:

In a five-count indictment, Mr. Robert Barbett, appellant, was charged with carrying a pistol without a license (Count 1);[1] unlawful possession of a firearm by a felon (Count 2);[2] possession of an unregistered firearm (Count 3);[3] unlawful possession of ammunition (Count 4);[4] and offenses committed during release (Count 5).[5] The jury acquitted Mr. Barbett on Count 1, found him guilty on Count 4, and later, after receiving an anti-deadlock instruction, found him guilty on Counts 2 and 3.[6]

Mr. Barbett appeals his convictions on Counts 2 and 3; he does not challenge his convictions on Counts 4 and 5. In challenging Counts 2 and 3, Mr. Barbett first argues that the trial court erred in refusing to grant a joint motion for mistrial and by giving an anti-deadlock instruction as a matter of routine without carefully examining the nature of the case and the length of the deliberations. Second, he argues that the trial court erred in giving an anti-deadlock instruction that he contends was more coercive than the instruction approved in *Winters v. United States*, 317 A.2d 530 (D.C.1974) (en banc).[7] As we have held repeatedly, "[f]ailure to exercise choice in a situation calling for choice is an abuse of discretion . . . because it assumes the existence of a rule that admits of but one answer to the question presented." *(James) Johnson v. United States*, 398 A.2d 354, 363 (D.C.1979). Here, we are forced to conclude that the trial court abused its discretion by failing to exercise

7. Mr. Barbett also asserts that this court should reconsider *en banc* our approval of the so-called *Winters* instruction. He acknowledges that a panel of this court cannot overrule *Winters*, but he makes the argument in his brief to "preserve the issue for further review if necessary."

its discretion in determining whether it was appropriate to issue an anti-deadlock instruction. Therefore, we reverse the convictions on Counts 2 and 3 and remand for further proceedings.

## I. FACTS

On September 1, 2010, Mr. Barbett was charged with five criminal offenses stemming from a traffic stop during which the arresting officer saw the butt of a gun sticking out from under Mr. Barbett's thigh. A jury trial before the Honorable Jennifer M. Anderson began in the morning on December 15, 2010. The jury began its deliberations on Thursday, December 16, 2010, at 3:25 p.m. At 4:44 p.m., the jury requested further explanation of the terms "intent" and "control" within the definition of constructive possession. The judge conferred with counsel and invited them to submit proposed instructions to respond to the jury's questions. At 4:50 p.m., the jury was brought into the courtroom, was told it would be provided instructions in response to its questions the next morning, and was excused for the day.

Deliberations resumed at 10:05 a.m. the next morning and at 12:13 p.m., the jury sent a note indicating it had "a unanimous position on Charges 1 and 4," but was "unable to reach a decision on Charges 2 and 3." The government requested that a partial verdict be taken; appellant requested a mistrial. The jury delivered a partial verdict acquitting Mr. Barbett on Count 1 (carrying a pistol without a license) and finding him guilty on Count 4 (unlawful possession of ammunition). At 12:40 p.m., the jury was told to "return to the jury room and continue deliberating on the other two counts."

Less than four hours later, at 4:13 p.m. on Friday afternoon, the jury sent a third note stating that it "cannot reach a unani-

mous decision" on the remaining counts and it saw "no chance for unanimity." Mr. Barbett's counsel requested a mistrial and the prosecutor said, "with the holidays coming up[,] I actually would move with [Mr. Barbett's counsel] for a mistrial at this point." Judge Anderson quickly rejected counsel's joint motion, stating, "I'm not giving a mistrial. Absolutely not.... I'm not giving a mistrial before I've even *Winterized* them. I mean, why should I— I don't understand, why should I do that?" Neither counsel responded to her seemingly rhetorical question. The judge asked the prosecutor if she was "not going to be here on Monday" to which the prosecutor responded that she had not intended to be in on Monday but that she would make herself available. The judge told the parties that the jurors would be instructed to return on Monday and she would give them "some additional instructions" at that time. After telling the jurors the same thing, the judge told them to "[p]ut the case out of your mind, come back to it fresh on Monday."

On Monday, December 20, 2010, the court recalled to the jury that "[y]our note indicates that you have been unable to reach a unanimous verdict at this time, and I would like to give you the following advice." The judge then gave an anti-deadlock instruction that mirrored the *Winters* instruction as set forth in the Criminal Jury Instructions for the District of Columbia, No. 2.91(III)(B) (4th ed. rev. 2008). Jury deliberations resumed at 10:10 a.m. and at 11:08 a.m., the jury sent a fourth note indicating it had "reached a unanimous verdict" on the remaining two counts. The jury found Mr. Barbett guilty on both counts. When polled, each juror adopted the verdict.

## II. DISCUSSION

 Mr. Barbett alleges that the trial judge "erroneously treat[ed] a *Winters* in-

struction as a routine charge that should ordinarily (or even always) be given before a court allows a mistrial" and that the court "failed to engage in the type of 'careful consideration' contemplated by this Court's precedent before proceeding *sua sponte* with its *Winters* charge." Our review is for abuse of discretion. *(James) Johnson,* 398 A.2d at 362. That review requires us to determine, "first, whether the matter at issue was committed to the court's sound discretion; second, whether the trial court recognized that it had discretion and, if so, whether the court purported to exercise that discretion; and third, whether the record reveals sufficient facts upon which the court based its decision" and whether that discretion was exercised erroneously. *Geddie v. United States,* 663 A.2d 531, 534 (D.C.1995); *(James) Johnson,* 398 A.2d at 365. If we find error, we must determine whether it is of such a "magnitude to require reversal." *Id.* at 366.

### A. Whether or Not to Give an Anti-Deadlock Instruction Is a Decision Committed to the Discretion of the Trial Judge.

▉ Addressing the first factor, it is without question that the determination whether or not to give an anti-deadlock instruction is committed to the court's discretion, but only after the court assesses whether or not the jury truly is deadlocked.[8] *See Hankins v. United States,* 3 A.3d 356, 361 (D.C.2010) ("Whether to give an anti-deadlock instruction when a jury reports itself at an impasse … [is] [a] question[ ] committed to the trial judge's discretion."). In *Winters,* noting that the approved instruction carries a "sting," this

court cautioned that it is not to be used "prematurely or without evident cause." *Winters,* 317 A.2d at 533. This is because an anti-deadlock "instruction … should be in the nature of an ultimate judicial attempt, not a preliminary attempt, to secure a verdict." *Thompson v. United States,* 354 A.2d 848, 851 n. 8 (D.C.1976). Accordingly, "its use should be confined to instances where deadlock is apparent." *Winters,* 317 A.2d at 533.

▉ "It is for the trial judge" to determine whether the jury is "genuinely deadlocked" or, put another way, if there is a hung jury. *Epperson v. United States,* 495 A.2d 1170, 1172 (D.C.1985). In making that determination, the trial judge must consider the "nature and complexity of the trial issues, the duration of the trial and the length of the jury deliberations, as well as the representations of the jury to the court about the state of its deliberations." *Id.* Although here the jury, in its third note, stated that it saw "no chance for unanimity," a "jury is not necessarily a 'hung jury' simply because it says it has been unable to reach a unanimous verdict." *Id.* at 1175 n. 10. Indeed, "[s]ome juries make this representation prematurely," *id.,* thus requiring the trial judge to take a closer look at the state of the jury's deliberations.

### B. The Trial Judge Failed to Exercise Her Discretion.

▉ Turning to the second factor, we cannot conclude that the "record reveals sufficient facts upon which the court based its decision." *Geddie,* 663 A.2d at 534. In fact, the record is barren as to the reasons

---

8. Accordingly, we reject Mr. Barbett's suggestion that the trial court was stripped of its discretion to determine whether or not to issue an anti-deadlock instruction because counsel jointly moved for a mistrial. *See also*

*Edelen v. United States,* 627 A.2d 968, 972 (D.C.1993) ("The decision whether to declare a mistrial is confided to the trial judge's sound discretion.").

for the trial judge's decision to give an anti-deadlock instruction save for her statement that, "I'm not giving a mistrial before I've even *Winterized* them" and her rhetorical question, "I mean, why should I—I don't understand, why should I do that?" Accordingly, we can only conclude that the court gave the instruction as a matter of routine and not after carefully considering whether or not the court had "before it a genuinely 'hung jury.'" *Epperson*, 495 A.2d at 1172.

This is error of a significant magnitude as we have repeatedly stated that anti-deadlock instructions "should not be given routinely," *Harris v. United States*, 622 A.2d 697, 703 n. 9 (D.C.1993) (internal quotation marks omitted), and "is not a course to be taken precipitously and automatically when a jury announces an inability to reach a verdict." *Thompson*, 354 A.2d at 851 n. 8; *see also Harris*, 622 A.2d at 703 n. 9 ("[A]n 'anti-deadlock' instruction . . . 'should not be given routinely, but only after careful consideration by the trial judge of the nature of the case and length of the deliberations.'") (quoting *Smith v. United States*, 542 A.2d 823, 825 (D.C. 1988)); *Wilson v. United States*, 419 A.2d 353, 356 (D.C.1980) (stating that a *"Winters* instruction . . . should only be given after considering the nature of the case and the time spent in deliberation").

 "[W]hen the trial court recognizes its right to exercise discretion but declines to do so, preferring instead to adhere to a uniform policy, it . . . errs," and "[a]n outright failure or refusal to exercise that judgment is wholly defeating." *(James) Johnson*, 398 A.2d at 363. *See also Houston v. United States*, 592 A.2d 1066, 1067 (D.C.1991) ("We will . . . reverse a trial court's ruling on a matter within its discretion when the trial court, while recognizing its right to exercise discretion, declines to do so, preferring instead to adhere to a

uniform policy") (internal quotation marks omitted). This is because the "discretion called for . . . is the exercise of discretion in individual cases, not the discretion of the trial judge to adopt a uniform policy . . . in all cases irrespective of circumstances." *Pernell v. United States*, 771 A.2d 992, 995 (D.C.2001) (ellipses in original) (internal quotation marks omitted). Here, the trial judge issued the anti-deadlock instruction as a matter of "uniform policy," without exercising her discretion, which is the definition of an abuse of discretion.

### C. The Record Does Not Clearly Support the Trial Court's Decision.

 Nevertheless, pursuant to the third factor, we are obliged to consider whether the record reveals sufficient facts upon which the court based its decision. "The test of the record underlying the exercise of a trial court's discretion tends to vary somewhat with the nature of the issue to be decided, [but] [g]enerally the factual record must be capable of supporting the determination reached by the trial court." *Geddie*, 663 A.2d at 534 (second alteration in original) (internal quotation marks omitted) (holding that "because the motion [for a new trial] presented a colorable claim for relief . . . we conclude that the court abused its discretion in denying the motion out of hand, without even stating a reason for the denial"). In addition, it is our duty to determine whether the decision maker failed to consider a relevant factor, whether [she] relied upon an improper factor, and whether the reasons given reasonably support the conclusion. *(James) Johnson*, 398 A.2d at 365 (internal quotation marks omitted).

 Before issuing an anti-deadlock instruction, a trial court is obligated to consider the "nature and complexity of the

trial issues, the duration of the trial and the length of the jury deliberations, as well as the representations of the jury to the court about the state of its deliberations." *Epperson*, 495 A.2d at 1172. Here, the court gave no indication that it weighed those factors, and it is not clear that, if those factors had been considered, the trial judge would have issued the anti-deadlock instruction. We note that the jury was tasked with trying to reach a unanimous decision on four charges. After deliberating for a total of three hours and twelve minutes, the jury reached a verdict on two of those charges. After delivering those verdicts, the jury was asked simply to "return to the jury room and continue deliberating on the other two counts." The jury deliberated for an additional three hours and thirty-three minutes before sending a note to the judge stating that it "cannot reach a unanimous decision" and saw "no chance for unanimity."

In total, the jury deliberated over the four charges for less than seven hours, which does not seem an unreasonably long time in light of the fact that the trial lasted nearly two days. *See Reed v. United States*, 383 A.2d 316, 322 (D.C.1978) (affirming the denial of a request for a mistrial where the jury deliberated for only twelve to fourteen hours after a three-day trial involving two co-defendants). While it is "not coercive to give a standard anti-deadlock instruction when a jury has declared itself unable to agree after having deliberated for a *considerable length of time*," we have no basis upon which to assess whether or not the trial court considered less than seven hours of deliberation time a "considerable length of time" for this case. *Hankins*, 3 A.3d at 362 (emphasis added).

Nor does it appear that the trial judge assessed the "representations of the jury to the court about the state of its deliberations." *Epperson*, 495 A.2d at 1172. Although the third note from the jury stated that it saw "no chance for unanimity," that was the first time the jury delivered such a strong statement, and the context here is relevant: the message came at the end of the day on a Friday, and approximately one week before Christmas. Further, the court did not ask the jurors whether additional deliberations would be helpful[9] before issuing the *Winters* instruction, nor does it appear that the court gave any consideration to issuing a "softer" anti-deadlock instruction than *Winters* this court's "high water mark" of anti-deadlock charges. *Winters*, 317 A.2d at 534. *See, e.g., Hankins*, 3 A.3d at 363 (commending the trial judge for taking pains to avoid coercion of a deadlocked jury, including by "eschew[ing] a *Winters* instruction in favor of the Gallagher instruction"). While trial judges are not compelled to employ these alternative measures, we mention them to underscore that there are a variety of ways trial judges may assess whether or not a jury is truly deadlocked and, if so, determine the appropriate judicial response to the particular situation at hand.

In light of the absence of any information regarding why the trial court decided to give the *Winters* instruction, we cannot discern whether the court "failed to consider" the relevant factors, whether it "relied upon an improper factor," or even whether it concluded that the jury was in fact hung. *(James) Johnson*, 398 A.2d at 365. We remind the trial court and counsel that they have the responsibility to "ensure that the record ... reflect[s] both the foundations and the reasoning behind

---

**9.** *See Benlamine v. United States*, 692 A.2d 1359, 1362 (D.C.1997) (after taking a partial verdict and later receiving a note that the jury was deadlocked, the court asked the jury if they were "hopelessly deadlocked" before issuing a *Winters* instruction).

the discretionary decision." *Id.* at 366. The record before us simply does not contain that information.

### D. The Magnitude of the Error Demands Reversal.

 Finally, in considering whether the error is of such a "magnitude to require reversal," we determine that it is. *(James) Johnson,* 398 A.2d at 366. Reversal is required where an "error in the discretionary determination [of the court] jeopardized the fairness of the proceeding as a whole, or if the error had a possibly substantial impact upon the outcome." *Id.* Giving an anti-deadlock instruction as a matter of routine, without determining whether the jury was genuinely deadlocked, jeopardizes the fairness of the trial. "It is axiomatic that a defendant in a criminal proceeding has the right to a trial by his peers who are free to deliberate and make an independent personal judgment as to guilt." *Morton v. United States,* 415 A.2d 800, 802 (D.C.1980). We cannot say that Mr. Barbett was afforded this right as it relates to the jury's deliberations on Counts 2 and 3, where it is not clear that the trial court determined that the jury was hung and, significantly, where the jury reached a unanimous verdict less than one hour after receiving the *Winters* instruction, which at a minimum causes us to question whether the verdicts were arrived

at "freely" and "fairly" or if, instead, a juror or jurors felt "forced to abandon an honest conviction." *Harris,* 622 A.2d at 701 (quoting *Smith,* 542 A.2d at 827). *Cf. Carey v. United States,* 647 A.2d 56, 61 (D.C.1994) (stating that "nothing in the record ... indicate[s] that the verdict was coerced" as a result of giving the *Winters* instruction and pointing to the fact that the jurors "deliberated for several hours after receiving the ... instruction"); *Nelson v. United States,* 378 A.2d 657, 661 (D.C.1977) (concluding that the effect of the anti-deadlock charge was attenuated because the jury was discharged for the balance of the day and then deliberated for the rest of the next day before returning a verdict); *(Tommie) Johnson v. United States,* 360 A.2d 502, 504 (D.C.1976) (stating that the "lack of any significant coercive effect is apparent from the fact that the deadlock on the armed robbery counts persisted following the delivery of the *Winters* charge"). In short, "[t]his is a case ... where our confidence in the outcome of the trial is necessarily undermined," *Perry v. United States,* 36 A.3d 799, 821 (D.C.2011), and reversal is required.[10]

### III. CONCLUSION

For the foregoing reasons, we hold that the trial court's failure to exercise its dis-

---

10. Because we are reversing on the grounds discussed herein, we need not reach appellant's argument that the language of the anti-deadlock instruction given by the trial court "rose clearly above the 'high-water mark' established in *Winters*." The instruction given by the trial court was almost identical to the suggested *Winters* instruction in the Criminal Jury Instructions for the District of Columbia, No. 2.91(III)(B) (4th ed. rev.2008), colloquially known as the "Red Book" ("2008 Red Book"). However, for reasons that are unclear, we note that the so-called *Winters* instruction in the 2008 Red Book deviates from the instruction scripted in *Winters*. In tracing

the evolution of the suggested *Winters* instruction, we found that in Criminal Jury Instructions for the District of Columbia, No. 2.91 (Alternative B) (4th ed.1993), the *"Winters* instruction" is identical to the instruction in *Winters,* 317 A.2d at 534. However, in the 2008 Red Book the language was modified without explanation. The modified instruction also appears in subsequent editions of the Red Book. We leave for another day the determination whether the alterations make the suggested *Winters* instruction, as it appears in the Red Book from 2008 forward, more coercive, less coercive, or equivalent to the original *Winters* instruction.

cretion in assessing whether it was appropriate to give the jury an anti-deadlock instruction was an abuse of discretion. Therefore, we reverse Mr. Barbett's convictions on Counts 2 and 3, unlawful possession of a firearm by a felon and possession of an unregistered firearm, and remand for further proceedings not inconsistent with this opinion.

*So ordered.*