953 F.2d 641
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry James ROWELL, Defendant-Appellant.
 No. 90-5347.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1991.
Decided Jan. 28, 1992.
As Amended March 2, 1992.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-89-57)
 Argued: John Michael Gassaway, Oklahoma City, Okl., for appellant; Robert Daniel Boyce, Assistant United States Attorney, Raleigh, N.C., for appellee.
 On Brief: Margaret Person Currin, United States Attorney, Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and JOHN C. GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Larry James Rowell, the defendant in a criminal theft trial below, appeals his convictions on grounds of error in venue, improper jury instruction, failure to direct verdict on the charge of conspiracy in one count, and, finally, error in giving a modified Allen charge. We find no merit in any of the grounds and accordingly affirm the judgment of conviction.
 
 I.
 
 2
 On November 30, 1988, two males stole twenty-three new Rolex watches from Carlyle and Company, an upscale jewelry store in Raleigh, North Carolina. The watches had a wholesale value of $104,142.50, and a retail value of $174,160.00. One or two weeks prior to this, defendant Rowell, a watch shop owner in Oklahoma City, Oklahoma, mentioned to Bobby Coonfield, a professional watch trader also from Oklahoma City, that he was expecting to obtain approximately twenty new Rolexes, which Coonfield could then buy. Coonfield evidenced interest. On the day of the robbery, November 30, defendant called Coonfield and asked if he were ready for the "big deal." Rowell mentioned that he was obtaining about twenty or twenty-one watches, that his total price to Coonfield would be $80,000.00, and that the watches were from "somebody he knew and he was going out to Atlanta to pick them up." Coonfield agreed to the purchase, but when he asked Rowell if he could accompany him to Atlanta, defendant refused.
 
 
 3
 On December 1, at 6:20 a.m., defendant took off from Oklahoma City on a Delta Airlines flight to Atlanta, Georgia. In the Atlanta airport, defendant purchased a return ticket to Oklahoma City for a flight departing that same day at 12:30 p.m. Rowell returned to Oklahoma City at approximately 2:30 p.m., at which time he met with Coonfield. Defendant had with him twenty new Rolex watches, wrapped in newspaper. On the watches were identification tags, giving serial numbers, price tags, and, on the majority, green seals indicating that they had not been worn and were new. These watches, though, were not in their customary boxes and had no other accompanying documentation. Coonfield, agreeing to purchase the watches for $63,000, asked where they had come from, and defendant mentioned that his source was "Joe," a boy whose "Dad used to own a night club here in Oklahoma City."
 
 
 4
 Coonfield later visited defendant at his shop to pay the $63,000. Rowell mentioned that he had to wire some of this money "to Joe, he's waiting in Philadelphia." Coonfield then sold the watches to Kenny Kelsey Specht, a supposed expert on Rolexes, for $98,500, and Specht in turn traveled to Europe and California to market them; only four of the watches so far have been recovered. After Coonfield had sold the watches to Specht, defendant cautioned him to be careful about whom he sold them to. When asked why--Coonfield supposedly believed that they had legitimately come from some type of insurance salvage--defendant stated, "Well, you're not quite that naive are you about getting that $100,000.00 or so worth of watches for $63,000.00[?]"
 
 
 5
 Around February 10, 1989, defendant told Coonfield that they needed "to get the[ir] stories together." He then proceeded to instruct Coonfield to tell anyone inquiring about the watches that they had initially come from a Nelson Metcals, a white, grey-haired man with a moustache from Houston, Texas, who had flown into Oklahoma City from Atlanta. This was the same story that Rowell later told F.B.I. agent Denise Minor on several occasions. Rowell has since confessed to being dishonest with Minor, because he did not want to provide evidence that he had traveled across state lines. He still contends that his supplier was Metcals, despite the fact that defendant's descriptions of Metcals have differed substantially each time he has told the story and no trace of any such person has ever been found.
 
 
 6
 Coonfield and Specht both provided law enforcement authorities with descriptions of the watches they had purchased. Of twenty-three watches stolen from Carlyle and Company, eighteen appeared on the lists Coonfield and Specht submitted. Two other watches listed by Coonfield and Specht matched descriptions of watches taken from Carlyle; however, Coonfield and Specht did not have serial numbers.
 
 
 7
 A federal grand jury for the Eastern District of North Carolina returned a three-count indictment against Larry James Rowell, charging him with: (a) conspiracy to transport stolen property in interstate commerce; (b) interstate transportation of stolen property; and (c) receipt, possession, and disposition of stolen property which had travelled in interstate commerce. After a jury trial, Rowell was convicted on all three counts, and the Court sentenced defendant to twenty-one months imprisonment on each count, the sentences to run concurrently.
 
 
 8
 Defendant raises four issues on appeal. We dismiss each as meritless.
 
 II.
 
 9
 A. Rowell first alleges that venue in the Eastern District of North Carolina was improper because he has never been in, nor had any contact with, the state of North Carolina. We hold that this contention is foreclosed by our opinion in United States v. Melia, 741 F.2d 70 (4th Cir.1984), cert. denied, 471 U.S. 1135 (1985), a case strikingly similar to the facts here. That case involved a theft of jewelry in North Carolina. The stolen merchandise was then transported from North Carolina to Ohio and from there to the defendant's home in Connecticut. The defendant was indicted on a charge of receiving, concealing, and selling stolen jewelry that had moved in interstate commerce in violation of 18 U.S.C. § 2315. He sought acquittal on the ground of improper venue, arguing that he could properly be tried in only Connecticut, where he received the stolen goods. In support of this argument, he insisted that the receipt of stolen goods was "a single act and the crime must be prosecuted where the receipt occurs unless the proof establishes that the defendant participated in removal of the goods from the district where the theft occurred." 741 F.2d at 72. The Court, however, found the argument without merit. Specifically, the Court determined that venue of a prosecution under section 2315 is controlled by 18 U.S.C. § 3237(a), which "was enacted, as we have shown, to deal precisely with this interstate 'process of wrongdoing.' ... Application of this statute to the facts of this case is not prohibited by the Constitution. See also Armour Packing Co. v. United States, 209 U.S. 56, 77, 28 S.Ct. 428, 433, 52 L.Ed. 681 (1908)." Id.
 
 
 10
 In Melia, we refused to follow United States v. Black Cloud, 590 F.2d 270 (8th Cir.1979); Jenkins v. United States, 392 F.2d 303, 30506 (10th Cir.1968); and United States v. Bozza, 365 F.2d 206, 22021 (2d Cir.1966), cases which the defendant Melia cited in support of his venue contention. We stated:
 
 
 11
 These cases do not require reversal of Melia's conviction. Neither Jenkins nor Black Cloud dealt with the relationship between §§ 2315 and 3237(a). In neither case did the government rely on § 3237(a). Bozza did consider § 3237(a) in determining venue for the prosecution of theft of stamps stolen from post offices and their transportation in interstate commerce. The court, however, did not advert to the legislative history, which explains, as noted above, the application of § 3237(a) to a prosecution under § 2315. Melia, 741 F.2d at 72. We find the reasoning of Melia controlling on the instant facts because there is simply no substantial difference, either factually or legally, between Melia and this case. As in Melia, we have no occasion to consider whether the defendant procedurally waived a right to raise on appeal the venue issue.
 
 
 12
 B. Defendant's second argument is that the Court erred in failing to instruct the jury on venue. The government argued in response that the district court sufficiently instructed the jury on venue by reading to it portions of the indictment. Furthermore, the government contends that the defendant did not offer a written requested instruction on venue. At the conclusion of the jury charge, defendant's counsel noted no objections. If error was made, it did not constitute reversible error under these circumstances.
 
 
 13
 C. Third, defendant argues that the evidence was insufficient to establish a conspiracy. Specifically, he contends there was no evidence that he conspired with another. Given the facts above, and viewing the evidence in the light most favorable to the government, one could easily find that Rowell conspired with his source (Joe) and/or Coonfield to transport stolen property across state lines.
 
 
 14
 D. Finally, Rowell objects to the modified Allen charge given to the jury when they were initially deadlocked. (Joint App. at 310-11). However, this Circuit has previously approved use of modified Allen charges. See, e.g., United States v. West, 877 F.2d 281 (4th Cir.), cert. denied, 493 U.S. 959 (1989); United States v. Davis, 481 F.2d 425 (4th Cir.), cert. denied, 414 U.S. 977 (1973). We do not find the modified Allen charge given here prejudicial to defendant.
 
 
 15
 AFFIRMED.